GATES *v.* DETROIT & MACKINAC RAILWAY CO.

1. LOGS AND LOGGING — TRANSPORTATION CONTRACT — CONSTRUCTION.
   Where a contract for the transportation of logs stipulated that plaintiff should furnish not less than five million feet per year until his timber should be cut from the lands described, such stipulation fixed the duration of the contract.

2. CONTRACTS—SEVERABLE CONTRACTS—BREACH — REMEDY.
   Where a railroad company, having contracted to transport timber in a certain amount per year for several years, elects to treat the contract as severable and not as entire, it is bound to perform its part of the contract, and seek compensation in damages for any breaches of the contract of which it is in a position to complain.

3. SAME—STIPULATIONS—WAIVER—EVIDENCE.
   In an action on a contract, by the terms of which plaintiff was to furnish for transportation five million feet of logs per year until his timber should be cut from certain lands, evidence examined, and *held*, that the stipulation as to the number of feet was shown to be waived by evidence showing that plaintiff was continually complaining of defendant's failure to furnish cars, and that defendant's superintendent was uniformly making excuses and promising better service for the future.

4. SAME—REVIVAL OF STIPULATIONS.
   Where parties mutually adopt a mode of performing their contract differing from its strict terms, or mutually relax its terms by adopting a loose method of executing it, neither party can go back upon the past and insist upon a breach because it was not fulfilled to the letter; but he may insist upon a different mode of observing it in the future, and require a return to the terms of the contract.

5. LOGS AND LOGGING— TRANSPORTATION CONTRACT — CANCELLATION.
   Where the stipulation in a contract for the transportation of forest products that plaintiff should furnish five million feet a year was waived by defendant's failure to provide cars, defendant was not entitled to cancel the contract before the expiration of the contract period on that ground and increase its tariff for transporting the timber.

6. SAME—BREACH—DAMAGES.

Where a contract for the transportation of forest products provided that plaintiff should furnish the grade and deed or lease of right of way, and that defendant should build the necessary track into the tract of timber, and defendant actually had peaceable possession of the right of way which was provided or paid for, so far. as necessary, by plaintiff, defendant was not damaged by plaintiff's failure to provide deeds or leases of the right of way.

7. SAME—LOGGING ROAD—RIGHTS OF PARTIES.

A contract for the transportation of forest products, and providing for the building of a railroad therefor, and providing that the railroad company should charge an increased tariff to others than the forest owner for transporting their products over the road, does not bind the owner to allow others to use his private roads and banking grounds without making such charge therefor as he sees fit.

8. SAME—ERROR CURED BY VERDICT.

Defendant cannot complain of error in presenting plaintiff's claim for decking logs where the jury found against the claim.

9. SAME—CONTRACT—CONSTRUCTION.

A contract, by which a railroad company agrees to transport "your" logs from certain described lands for a certain price, and to charge others a higher rate, and divide the excess with the forest owner, obliges the company to carry, at the prescribed rate, only the logs cut from his own land by the forest owner, and allows it to charge regular rates for logs purchased from others.

Error to Bay; Shepard, J. Submitted February 14, 1907. (Docket No. 97.) Decided March 12, 1907.

Assumpsit by Samuel G. M. Gates against the Detroit & Mackinac Railway Company for breach of contract to transport certain logs. There was judgment for plaintiff, and defendant brings error. Affirmed, on condition.

*James McNamara* (*T. A. E. & J. C. Weadock*, of counsel), for appellant.

*Gillett & Clark* (*DeVere Hall*, of counsel), for appellee.

BLAIR, J.   This is an action to recover damages for the alleged breach of a contract, made in August, 1899, to haul plaintiff's logs and other forest products over a logging railroad constructed by the parties under the contract   The contract was evidenced by certain letters written by defendant's general superintendent and agreed to by the plaintiff, containing, among other provisions, the following:

"We to haul your logs from town 25 north range 4 and 5 east to North Bay City at the rate of $3.00 per thousand feet board measure, but nothing greater than 33⅓ to be deducted from any log for defects and a minimum of 2,500 feet to the car.   *   *   *
"Where train is run exclusively for logs the minimum train is 25 cars.   You to furnish not less than five million feet per year until your timber is cut from above described lands.   *   *   *
"In regard to allowing other parties to haul timber from this branch.   We will add an additional charge of 25 cents per thousand, and $1.00 per car for all other classes of freight that may come from this branch and divide the amount equally with you."

The railroad was built for a distance of approximately five miles in 1899, and during the year 1902 was completed to the point designated in the contract.   Plaintiff began lumbering his timber January 1, and began hauling May 1, 1900.   The shipments of logs and other forest products, up to the year 1904, were as follows:

| Year. | Feet. | Other Forest Products. |
|---|---|---|
| 1900 | 2,357,982 | 44 cars. |
| 1901 | 2,600,125 | 22 cars. |
| 1902 | 2,603,773 | 25 cars. |
| 1903 | 2,320,916 | 101 cars. |
| Total | 9,882,796 | 192 cars. |

In February, 1903, the parties having got into a controversy over the right of plaintiff to collect certain charges for the use of his private roads and banking grounds before permitting the shipment of ties theretofore purchased by

the defendant of a third party, the defendant wrote a letter to the plaintiff containing the following:

"*Dear Sir:* Your favor of the 17th instant in regard to the matter of the ties this company has bought of the Cash Mercantile Company, at South Branch, which are located at the back end of what is known as the ' Gates Branch,' at hand.

" I wish to state that this company has bought the ties in question from the above-named company and have settled with that company for the ties.   We propose to move these ties from that point, regardless of any understanding that you have had with Mr. Harper or the Cash Mercantile Company, and do not propose to pay you, nor any one else, for the privilege of moving them out.   I wish you to distinctly understand that, when we get ready to move these ties, we propose to go there, load them, and take them out.

" There are several matters connected with the branch that we built for you that you have never carried out your part of the agreement, and, if you still persist in being arbitrary in regard to the freight that is to be moved over this branch, we shall call upon you to carry out your contract and to the letter."

This matter was adjusted between plaintiff and the third party without expense to the defendant, and affairs went on as before till January 13, 1904, when defendant's superintendent wrote the following letter to plaintiff:

"S. G. M. GATES,

    "Bay City, Mich.

"*Dear Sir:* In looking over the contract for hauling your timber from town 25 north, range 4 and 5 east, I find that it specifies you are to ship not less than five million feet of logs per year.   I have had a statement made for each year, commencing with the year 1900, with the following results:   *   *   *

" The total amount of timber hauled for you from the above-described lands in four years, allowing three thousand feet to logs for each of the 192 cars of other forest products, overruns the amount of feet of logs that we should have had in two years only 458,796 feet.

" This is a violation of the contract on your part, and we have decided to cancel the contract, and what logs we haul for you from that branch in the future will be

billed at the advanced rate with an additional 25 cents per thousand added to each thousand, making $4.25 per thousand on hardwood and pine, and $3.75 per thousand on hemlock and tamarack, subject to rules of our log tariff.

"The above violation is not the only one. An agreement was made with you that an additional charge of 25 cents per thousand on logs and $1.00 per car on all other classes of freight was to be charged to other parties wishing to ship from that branch, and you was to receive one-half of that amount. This was agreed to on our part with the understanding that other parties were not going to be prohibited from banking and loading out such forest products as they chose to ship. You have taken the stand that no one can ship anything over that branch but yourselves, unless they pay you an exorbitant price for doing so. Now, we propose to allow other people to do business on this branch, and, if it cannot be done peaceably, we certainly will be obliged to take legal steps to, accomplish that end.

"Commencing Monday, January 18, 1904, all logs consigned to you from the above named towns will be billed at the above named rate.

"Yours truly,
"C. W. LUCE,
"General Superintendent."

After the receipt of this letter plaintiff paid the increased rates specified therein under protest, and such increase constitutes one of the items of damages claimed in his bill of particulars.

Defendant, under the plea of the general issue, gave notice that:

1. The plaintiff, as an inducement to defendant to make the contract, represented that he owned and controlled timber tributary to the proposed logging road, which, when cut into logs, would amount to 10,000,000 or 12,000,000 feet, and that others owned timber tributary to such track, which, when marketed by means thereof, would aggregate 30,000,000 feet.

2. Plaintiff failed to furnish, as agreed in contract, deed or lease of right of way, or to build grade and furnish ties delivered on the grade, to defendant's damage $2,000.

3. Plaintiff failed to furnish 5,000,000 feet per year as agreed, although defendant had expended $15,000, relying upon his performance of his agreement and preparing to carry out the same on its part, and which it was at all times able and willing to perform on its part, "and, so far as laid in its power, the said contract has been fully performed," to the defendant's damage $15,000.

4. "That in and by the terms of the contract above referred to the plaintiff was required to permit all persons desiring to ship forest products or other freight over the defendant's road the privilege of loading and shipping the same upon and across plaintiff's lands,  *  *  *  but refused to permit parties desiring to ship logs and other classes of freight to load the same upon defendant's cars on plaintiff's lands unless such parties should pay to plaintiff an additional charge of $1 per thousand feet, which was unreasonable and unwarranted, as well as prohibitive, and, in consequence of such failure of said plaintiff to perform the said contract according to its true intent and meaning, the defendant made great losses and was unable to ship a great many, to wit, 20,000,000 feet of logs and a great many hundreds, 500, cars of other freight which it otherwise would have been able to ship, to its damage, to wit, $10,000."

The jury rendered a verdict for plaintiff for $1,924, which, as stated by counsel for defendant in their brief, was "the amount of the difference between the regular schedule rate paid by him and the contract price on the amount of logs actually shipped between January 13, 1904, and the date of the commencement of suit."

The defendant has brought the record to this court for review, assigning errors which may be grouped as follows:

1. Erroneous rulings of the court during the progress of the trial.

2. Erroneous instructions to the jury.

3. Erroneous refusals of defendant's requests to charge.

Each party claimed and gave evidence tending to show readiness and ability to perform the contract, and that failure to perform was due to the default of the other party. Counsel seem to agree that the contract was never rescinded, and that the rights of the respective parties

were to receive compensation in damages for breaches of the contract by the other party. The position of defendant, as stated by its counsel, is as follows:

"The legal rule which the defendant invoked in this case is that which is laid down by this court in the case of *McGregor* v. *Ross' Estate*, 96 Mich. 103, when the defendant undertook to recover damages it had sustained because of being prevented from completing the contract. It was contemplated that the logs upon the lands owned by Gates at the time the contract was made would be removed at the rate the logs would be furnished within two years, or, at the most, three years, and that time was up. It was also contemplated that the plaintiff would permit others to load freight upon defendant's cars upon the track in question, and that the plaintiff refused to do. The circuit judge held that the defendant company could not rescind the contract and claim damages for its breach. There was no effort made to rescind the contract. The contract was substantially performed. The plaintiff was undertaking to extend it beyond its terms for his own convenience and purposes, and his claimed right to do so was terminated by the letter of Mr. Luce advising him that the same was canceled, and that thereafter all logs transported would be at the regular schedule rate. The defendant did not seek to recover for any damages occasioned by the failure of the plaintiff to carry out its contract after the date of that letter. It simply sought to hold the plaintiff for the injuries then inflicted. It was never the theory of the defense that the contract was of no force or effect, or that the same had been rescinded."

This construction of the contract is apparently based upon the testimony of President Hawks that plaintiff told him before the contract was executed that he had only 12,000,000 feet of logs for shipment. Mr. Hawks further testified:

" *Q.* He said he had 12,000,000 feet of timber?
" *A.* Yes, sir.
" *Q.* He did have, did he not?
" *A.* It turned out later that he had 28,000,000 or 30,000,000.
" *Q.* He did have 12,000,000?
" *A.* He said that was all he had.

" *Q.* How did you expect him to ship 5,000,000 feet of logs for five years and have only 12,000,000 feet?

" *A.* There was nothing said in the contract about shipping 5,000,000 feet of logs for five years.

" *Q.* There wasn't?

" *A.* He was to ship 5,000,000 feet of logs a year.

" *Q.* For how many years?

" *A.* Until he had 12,000,000 of logs shipped.

" *Q.* That is your contract, is it?

" *A.* That is our contract. The contract don't say anything about 12,000,000.   *   *   *

" *Q.* Will you point out in the contract where there is anything that indicates he was to furnish 5,000,000 feet a year for two years and 2,000,000 the third year, and that satisfied the contract?

" *A.* The contract says he was to furnish 5,000,000 a year. That is all we wanted. I understood, then, that he had 12,000,000 feet; that he was to ship it out at this rate, and when that was shipped out it complied with our contract, except that we were to have the use of the right of way for the balance of the five years."

The plaintiff and defendant's superintendent first discussed the subject-matter of the contract on the train; Mr. Hawks having turned the whole subject over to Mr. Luce, the superintendent. Mr. Luce testified:

"Well, Mr. Gates, as I remember, was in Tawas for one day, or possibly two, following the time that I met him on the train, and we talked the matter over, and I said to Mr. Gates, 'I will outline to you just what we will do in the matter of hauling your logs out from above South Branch to North Bay City, and I will write you a letter stating just what we will do,' which I did.   *   *   * I tried to cover all the different points. I thought I covered all the different points that should be covered with the experience I had had in the logging business.   *   *   *

" *Q.* These three letters incorporate everything that was agreed to between you, do they not?

" *A.* Yes, sir."

The contract was intended to and did embrace the entire agreement of the parties. Its terms are unambiguous, and the duration of the agreement as to hauling plaintiff's logs is fixed by the clause:

"You to furnish not less than five million feet per year until your timber is cut from above described lands."

The parol understandings of the parties prior to the written agreement cannot, even though they induced the making of the contract, be permitted to vary its plain provisions.  As the defendant's counsel expressly disavow a rescission of the contract and plant their case upon the right to recover damages for breaches of a contract performed by defendant so far as it was permitted to perform it by plaintiff, the contract rate for hauling the logs must prevail until the period fixed had elapsed.  As "it turned out later that he had 28,000,000 or 30,000,000," or, according to plaintiff, about 25,000,000, feet, the contract period was not at an end when the letter of January 13, 1904, was written.  Defendant, having elected to treat the contract as severable and not as entire, was bound to perform its part of the contract, and seek compensation in damages for any breaches of the contract which it was in a position to complain of.  Under its plea and notice defendant, if it had complied with the agreement so far as not prevented, and had not waived performance on the part of plaintiff, could have recovered its damages, if any, for the failure on the part of plaintiff to deliver 5,000,000 feet of logs per year; but there was no proof of any other items of damage for which it was entitled to recover under its plea and notice.

The court submitted to the jury the question whether the defendant was able to and had performed its agreement as to furnishing cars except as it had been prevented from doing so by the failure of the plaintiff to furnish logs, instructing the jury:

"That, under the terms of the contract, it was understood that the plaintiff was to furnish the defendant 5,000,000 feet of logs a year to be transported, and that contract is valid and the defendant would be entitled to the benefit of it, and the damages arising from its breach, unless it has waived the terms of it by its own action and conduct, and failure to carry out so much of the contract

or obstruct the carrying out of the contract itself so as to prevent its being carried out on the part of the plaintiff."

We think defendant was not entitled to have this question submitted to the jury. The evidence was conclusive that both parties had waived the provision that plaintiff should furnish 5,000,000 feet for shipment, and that defendant should furnish the cars therefor as ordered. The evidence of waiver is principally in the letters of the parties, from which it appears that the plaintiff was continually complaining of the failure to furnish cars, and that defendant's superintendent was uniformly making excuses for the failure to furnish cars and promising better service for the future. Some of these letters we quote from as follows:

"Sept. 15th, 1900.
"You are long enough on cars to give them to my neighbors and keep them well supplied. *I have carried out my arrangements with you and your people* and don't know any reason why you should discriminate against me, and do know good reasons for your favoring me above other of your customers.

"*If there is anything further that I have not done which you expect me to do, kindly name it, and oblige,*
"Yours truly,
"S. G. M. GATES."

"*Dear Sir:* Your favor of the 15th inst. in regard to cars for logs at hand. The reason we did not give you cars for logs was on account of your August freight bills not being paid. We were not advised until today, by our agent at North Bay City, that your August bills were paid. We will now try and give you cars again, same as last month.

"I assure you we do not intend to discriminate against you in favor of your neighbors, nor have we done so.
"Yours truly,
"C. W. LUCE,
"General Superintendent."

"Dec. 28th, 1901.
"I relied on your giving me a specified number of cars per day. Had men to load them and men to unload them and started the mill and we are about out of logs. *If*

*there is anything wrong or any reason why there is to
be a change, you should have let me known.*

"Let me hear from you at once, and oblige,
"Yours truly,
"S. G. M. GATES."

"Nov. 4, 1902.

"I have had no cars for logs for several days and need
them badly.   I shall want cars for shingles pretty regu-
larly, about two a week.

"Hoping you will be able to furnish these promptly, I
remain,
"Your humble servant,
"S. G. M. GATES."

"S. G. M. GATES,
"Bay City, Mich.

"*Dear Sir:* Referring to yours of the 12th inst. in re-
gard to cars for logs.   I will state that we will place 7 flats
for you tonight, and will do the very best we can in the
future in the way of supplying cars for you.   I find that
it is almost impossible to get enough of our flats to supply
more than one-half of our orders.

"In regard to car for shingles which you spoke to me
about while in Bay City yesterday, we expect to place a
stock car for you tonight on the shingle order.
"Yours truly,
"C. W. LUCE,
"General Superintendent."

"Jan. 5, 1903.

"Now, if I cannot have cars to ship out the product I
am producing up there let me know, and I must stop pro-
ducing and quit the business.

"I asked you to give me a steady business, about so
many cars a day, eight or ten.   Some days I get a fair
amount, some days none, and some days one-half the
amount.

"I have started and stopped my mill at an expense of
$25 per day three or four times this winter, because I had
to wait for logs, only running one side of the mill at that.

"Now, what I ask of you is this: To tell me what you
will do and what you won't do, and I must govern my-
self accordingly.
"Yours truly,
"S. G. M. GATES."

"*Dear Sir:* Your favor of the 5th instant received. I regret that we have been unable to give you more cars for your log and bark shipments during the past few days. We have been starting a few log trains and the flat car demand has been so sharp we could not do better. However, I will start you going at once, and will put forth every effort to see that you are kept better supplied in the future. Will also rush in some cars for bark.

"Yours truly,
"C. W. LUCE,
"General Superintendent."

"Nov. 27, 1903.
"*Dear Sir:* I am ready to haul logs and we should like at least five cars a day on the Gates branch. We can keep your train going at ten or twelve cars a day and we have a good deal of bark up there."

"Nov. 29, 1903.
"S. G. M. GATES,
"Bay City, Mich.
"*Dear Sir:* Your favor of the 27th. I will start a few flats going in for you the first of the week, also some cars for bark. We are at the present time badly crippled for cars, but will do all possible to give you as near to what you need as possible.

"We will not be able to give you ten cars a day for a few days at least.'

"Respectfully,
"C. W. LUCE,
"General Superintendent."

"January 7, 1904.
"S. G. M. GATES,
"Bay City, Mich.
"*Dear Sir:*   *   *   * In regard to cars for logs, we have been giving you cars daily for some time past for logs. While we might not have given you all that you require we have done the very best we could, but from now on for some little time there is no reason why we cannot give you cars to the extent of ten a day, providing, however, that all cars are released and returned to us promptly at Bay City.

"Yours truly,
"C. W. LUCE,
"General Superintendent."

In 1902 the track was extended at an expense to Gates of some $9,000, and not an intimation was given by defendant, in writing or otherwise, till January 13, 1904, as to any dissatisfaction on defendant's part because of failure to ship the amount of logs required by the contract, although the occasion for such complaint was frequently presented, and on some occasions defendant was expressly requested to state if in any way plaintiff had failed to discharge his obligations.   Defendant's letter of February, 1903, was rather a ratification than a repudiation of the method of performing the contract up to that time, and only threatened to insist on performance in accordance with the contract in case plaintiff should still persist in being arbitrary as to freight of others.   As said by Judge Agnew in a parallel case:

" If the parties mutually adopt a mode of performing their contract differing from its strict terms,   *   *   * or if they mutually relax its terms by adopting a loose mode of executing it, neither party can go back upon the past and insist upon a breach because it was not fulfilled according to its letter.   He may insist upon a different made of observing it in the future and require a return to the terms of the contract.   *Hazleton Coal Co.* v. *Buck Mountain Coal Co.*, 57 Pa. 301.

The defendant did not propose by the letter of January 13, 1904, to proceed with the contract thereafter in accordance with its terms, but to treat it as ended and canceled, and utterly refused to transport plaintiff's logs at the contract rate.

Defendant was unable to show any damages incurred by plaintiff's failure to give a deed or release of the right of way, and it actually had peaceable possession thereof, which was provided and paid for, so far as necessary, by plaintiff.   There was nothing in the contract to prevent plaintiff from making such charges as he thought fit for the use of his private roads and banking grounds, and defendant had no legal right to complain.

The jury found against the plaintiff's claim of damages

for decking logs, and the error, if any, of submitting that question, was without prejudice.

We are of the opinion, however, that the court should have qualified his instruction as to the amount of the overcharge plaintiff could recover by instructing them that such overcharge could not be recovered as to any logs not cut from plaintiff's lands, but purchased of others. The contract, as we construe it, only authorized the plaintiff to demand the $3 rate for logs cut from his own lands, which were the subject of the contract. As the bill of particulars only involved logs hauled after January 13, 1904, and no claim was presented for the excess on purchased logs hauled prior to that time in defendant's plea and notice, we can only consider the logs hauled after that date. The only evidence in the record upon that subject is that the amount recovered as overcharge on purchased logs was $75, and the verdict was too large by that amount.

For this reason, the judgment will be reversed, and a new trial granted, unless the plaintiff shall, within 30 days, remit the above amount, in which event the judgment will be affirmed, without costs to either party.

McALVAY, C. J., and CARPENTER, GRANT, and MONTGOMERY, JJ., concurred.