GATES v. DETROIT & MACKINAC RAILWAY CO.

1. INJUNCTION — PRELIMINARY INJUNCTION — OBJECT — PRESERVA-
   TION OF STATUS QUO.
       The object of preliminary injunctions is to preserve the status
       quo, so that upon the final hearing the rights of the parties.
       may be determined without injury to either.

2. SAME—MANDATORY INJUNCTIONS—PROPRIETY.
       Though courts look with disfavor upon mandatory injunctions,
       and will only grant them when necessary to preserve the
       status quo, the fact that the status quo is not always a condi-
       tion of rest, but sometimes a condition of action, is 'recog-
       nized, and whenever a mandatory injunction is essential to
       preserve the status quo, and serious inconvenience and loss
       will result if it is not preserved, the courts do not hesitate to.
       grant it.

3. SAME—CARRIERS—RAILROADS—DELIVERY OF CARS TO CONNECT-
   ING CARRIER.
       Where a railroad company has for seven years delivered cars of
       logs at the terminus of its line to a connecting carrier, under
       a special contract of carriage with complainant, and only re-
       fuses to do so and to require complainant to unload at its
       terminus after a disagreement has arisen concerning the
       construction of the contract as to other matters, and the
       company can suffer little injury by continuing to do tempo-
       rarily as it has done for seven years, while the complainant
       will suffer serious if not irreparable loss, a case for a manda-
       tory injunction is presented.

4. SAME.
       In so far as the injunction allows complainant to determine
       what logs he is shipping under the contract and what outside
       of it, and compels defendant to accept his determination
       upon that point, it is too broad.

Appeal from Bay; Collins, J.   Submitted January 16,
1908.   (Docket No. 77.)   Decided March 17, 1908.

Bill by Samuel G. M. Gates against the Detroit &
Mackinac Railway Company for an injunction.   From an

order granting a preliminary injunction, and an order denying a motion to dissolve, defendant appeals. Modified and affirmed.

*Gillett & Clark*, for complainant.

*Weadock & Duffy* (*James McNamara*, of counsel), for defendant.

GRANT, C. J. The defendant has appealed from an order granting a preliminary injunction and the order of the court refusing to dissolve it. The injunction is mandatory in character, and reads as follows:

"It is further ordered, and the court does hereby strictly command and enjoin the defendant, Detroit & Mackinac Railway Company, its counselors, attorneys, solicitors and agents, employés and servants, and each and every of them, particularly those of its officers and agents, employés and servants, who have charge and control of defendant's yard in North Bay City, Bay county, Michigan, to place all cars containing logs shipped by complainant from town 25 north, range 4 east, Oscoda county, Michigan, and town 25 north, range 5 east, Alcona county, Michigan, to said North Bay City (excepting logs marked 'U. T.' now on section 13, town 25 north, range 4 east), upon the transfer track in defendant's yard at North Bay City heretofore used for the placing of such cars for transfer by the engines of the Michigan Central Railroad Company, and to leave safe and unobstructed access thereto by the said engines at such times and under such conditions as have heretofore been customary and usual until the further order of this court, and that the said defendant and its officers and agents, employés and servants, before mentioned, do absolutely desist and refrain from refusing or wilfully neglecting so to do, and from exacting or demanding the payment of freight in excess of $3 per thousand feet as a condition of the placing of cars for loading or of the acceptance for shipment or hauling of any logs heretofore or hereafter cut and shipped or offered for shipment by complainant from town 25 north, range 4 east, Oscoda county, Michigan, and town 25 north, range 5 east, Alcona county, Michigan, to North Bay City, Michigan (excepting logs marked 'U. T.' now on section

13, town 25 north, range 4 east), and from exacting or demanding the payment of any sum in excess of said freight at $3 per thousand feet and the additional provisional sum of $1 per car as a condition of placing the same upon the transfer track aforesaid and permitting their removal therefrom by the Michigan Central Railroad Company, until the further order of this court.

"Also from exacting or requiring as a condition of such placing of cars, acceptance, hauling or delivery, the unloading or agreement to unload such cars at North Bay City until the further order of this court.

"It is further ordered that upon the placing of cars containing complainant's logs upon the transfer track aforesaid, complainant shall be entitled to the period of two days of twenty-four hours each, commencing six hours after the receipt of notice that cars have been so placed, exclusive of legal holidays and Sundays, to transfer, unload and return said cars without the charge or payment of demurrage therefor, but that complainant shall pay provisionally for the use of such cars during said period the sum of $1 per car in addition to the freight due upon the contents of such cars."

The rights and obligations of the parties to this litigation depend upon a contract which was in issue in a suit at law between these same parties, which was brought to this court upon writ of error, and is reported in 147 Mich. 523.

The main contentions growing out of the contract were there decided against the defendant. Under that contract the defendant agreed to deliver the logs at Bay City. Complainant's mill at Bay City was located about eight miles from the terminus and yard of the defendant, and on the Michigan Central Railroad. For seven years it had been the custom of the defendant to deliver the cars loaded with defendant's logs upon a side track in its yard. The engines of the Michigan Central Railroad then received the cars upon this side track and drew them to the complainant's mill, where they were unloaded and returned to defendant's side track. On May 8, 1907, the defendant, through its superintendent, notified Mr. Gates that he must unload his logs at North Bay City, and re-

fused to allow their cars loaded with complainant's logs to be taken from the defendant's rails for delivery to the mill. Thereupon Mr. Gates filed this bill in chancery, alleging the custom of the defendant to deliver its logs in the manner it had done for seven years; that the contract was made with reference to that custom, and that it was binding upon the defendant. The defendant denied the custom. The bill also sets forth the impracticability of unloading the logs in the defendant's yard for reshipment to his mill, and the serious inconvenience and loss, and irreparable injury which would result to him from so doing. It is unnecessary to set forth the allegations in detail. The answer admits many of the essential facts.

The main contention on behalf of the defendant is that the preliminary injunction is mandatory and therefore not within the power of the court to grant. The two important questions raised by the pleadings are:

1. Is defendant under obligation to deliver its logs on its side track at Bay City (the place mentioned in the contract for delivery) for further transportation to the defendant's mill?

2. What portion of the logs, if any, did not come from the lands covered by the contract?.

The question of the price for transportation of logs covered by the contract was settled in the former suit. The object of preliminary injunctions is to preserve the status quo, so that upon the final hearing the rights of the parties may be determined without injury to either. Courts look with disfavor upon mandatory injunctions and will only grant them when it is necessary to preserve the status quo. Usually an order restraining action will accomplish this result, but the status quo is not always "a condition of rest, but of action." Whenever courts have found a mandatory injunction essential to the preservation of the status quo, and serious inconvenience and loss would result if not preserved, they have not hesitated to grant it. *Coe* v. *Railroad Co.*, 3 Fed. 775; *Toledo, etc., R. Co.* v. *Pennsylvania Co.*, 54 Fed. 730,

746 (19 L. R. A. 387, 395). See, also, authorities there cited; 4 Pomeroy on Equity Jurisprudence (3d Ed.), § 1359; 1 High on Injunctions (4th Ed.), § 621a; 2 High on Injunctions (4th Ed.), § 1415k; 22 Cyc. p. 743.

So far as the delivery of the logs is concerned, the preliminary injunction only preserves the status quo which had existed for seven years.

If the complainant can maintain that this delivery was the one contemplated by the parties and included in the contract, he will be entitled to a permanent injunction. The defendant can suffer little injury by continuing to do temporarily as it has done for the last seven years, while the complainant will suffer serious if not irreparable loss. We think this a proper case for the issuance of a mandatory injunction. But the injunction allowing complainant to determine what logs he is shipping under the contract and what outside of it, cannot be maintained. This is not preserving the status quo as known to both parties. It permits the complainant to determine the status quo and compels the defendant to accept his determination upon that point. This cannot be done by the preliminary injunction of a court of chancery. As to this the preliminary injunction will be dissolved.

The defendant will recover costs.

BLAIR, MOORE, CARPENTER, and MCALVAY, JJ., concurred.