GATES *v.* DETROIT & MACKINAC RAILWAY CO.

1. Specific Performance—Mistake—Res Adjudicata.
   An error in the description of land named in a contract which was the subject of previous litigation between the parties, the mistake being there recognized and treated as corrected by the court and parties, will not be considered as open in a subsequent suit for specific performance.

2. Same—Custom and Usage—Contracts.
   A custom followed for seven years in the performance of a contract for the carriage and delivery of logs, whereby the cars of timber were delivered, in accordance with a practice usual in other similar cases, at the complainant's mill instead of at North Bay City, the place named in the contract to which the haul should be made, should be considered as controlling the effect of the agreement.

Appeal from Bay; Collins, J. Submitted June 21, 1909. (Docket No. 47.) Decided November 5, 1909.

Bill by Louise M. Gates, administratrix of the estate of Samuel G. M. Gates, deceased, against the Detroit & Mackinac Railway Company for an injunction, the specific performance of a contract, and an accounting. From a decree for complainant, defendant appeals. Affirmed.

*Gillett & Clark,* for complainant.

*James McNamara* (*Weadock & Duffy,* of counsel), for defendant.

McALVAY, J. The bill of complaint in this case was filed by complainant's decedent. The action was revived by the administratrix after his death. It arises from a dispute between the parties relative to their respective rights under a certain contract entered into between them. This contract was made in August, 1899, by certain correspondence, for the hauling of complainant's logs from town 25 N., range 4 and 5 E., at a freight rate of $3 per 1,000 feet to 'North Bay City. A logging road, called "Gates Branch," was built according to the terms of the contract by these parties; Mr. Gates furnishing the right of way, grading, and the ties, defendant doing the ballasting and putting on the rails. The branch was about six miles in length. Logs to the amount of several millions of feet were hauled during the years 1900 to 1903, inclusive, at the contract rate. During this time all deliveries were made by defendant by turning over its cars at North Bay City, its transfer yard, to the Michigan Central Railroad Company, which delivered them over its own tracks to the Gates mill, where the cars were unloaded and then returned by the Michigan Central Railroad to defendant's tracks at North Bay City.

In January, 1904, defendant notified complainant by letter that the freight rate would be increased. The increased rate was paid under protest, and complainant

brought an action at law to recover overcharges so paid during the year 1904. He recovered judgment, which, with a slight modification of $75, deducted for noncontract logs, was affirmed by this court in *Gates* v. *Railway Co.*, 147 Mich. 523 (111 N. W. 101). The opinion in that case contains the contract and other correspondence between the parties. Reference is had to it for a more extended statement of facts. That judgment was paid and satisfied.

It was settled in that case that the contract did not apply to timber purchased by complainant after the contract was entered into, and also that the contract rate would continue in force until all the timber included within its terms had been hauled. That case was decided March 12, 1907. The parties were unable to come to a settlement for the overcharges due to complainant for the years 1905 and 1906, and defendant continued to collect overcharges for hauling logs, claiming that they were not contract logs. After some correspondence between the parties, defendant, on May 20, 1907, notified complainant that it would no longer permit the cars to be taken, and the delivery of the logs to be made, at complainant's mill for unloading, as had before that date always been done, as hereinbefore described, but would require them to be unloaded at North Bay City, and in carrying out this determination, defendant, on the next day, informed complainant that it had in its possession at North Bay City 24 cars of logs consigned to him, which would not be delivered until the freight thereon was paid, at the rate of $4.25 per thousand for hard wood, and $3.25 per thousand for other logs. Tender of the full price under the contract was at once made to defendant, with a demand that the usual delivery be made. The tender was refused, and the demand disregarded, and the logs were held by defendant. Thereupon the bill of complaint in the case at bar was filed to compel a specific performance of the contract, both in respect to the freight rate, and the transfer privileges,

to which complainant claimed he was entitled under the contract, also for a decree for a repayment of excess freight charges paid under protest during the years 1905–1907. A mandatory injunction was applied for, after an ordinary negative injunction had been granted, and a motion made to dissolve the same. The motion to dissolve the injunction was denied, and a mandatory injunction was issued as prayed. Defendant then appealed to this court, and the mandatory injunction was affirmed, except as to logs concerning which there was a question whether they were included in the contract. *Gates* v. *Railway Co.*, 151 Mich. 548 (115 N. W. 420). Since that time the case has been heard in the circuit court, and a decree rendered in favor of complainant, granting the relief prayed for, and also decreeing the sum of $5,141.82, with interest, to be due complainant for overcharges paid under protest to defendant, in excess of the contract price per thousand for hauling complainant's logs.

That a clerical error occurred in the number of the township to which the road was to extend, for the purpose of reaching the Gates timber, is apparent, and was recognized by both parties in the action at law, as appears by the declaration, plea, and admission upon the trial. The opinion of the court in that case having accepted the correction agreed upon of an error so obvious, the question is foreclosed against defendant. In the contract a general description of the tract of timber is given as located in town 24 (25) north, range 4 and 5 east. The descriptions given in detail in the bill of complaint are all within such town and ranges, and the proof is clear that this was the timber in contemplation of the parties and made the subject-matter of the contract. It is the timber which was cut by complainant and hauled by defendant every year since 1900 under the terms of this agreement, except a small amount cut from after-acquired lands. The evidence on the part of complainant establishes a *prima facie* case of ownership by Mr. Gates of the timber hauled by defendant under this contract. No testimony was offered upon

the matter by defendant. This is the contract timber which complainant was entitled to have hauled by defendant at the contract rate. These are the logs which defendant, before the commencement of this suit, refused to continue to place on the side track in its yard to be received by the Michigan Central engines and delivered at complainant's mill in Bay City, and notified complainant that he must unload at North Bay City.

The bill in this case was filed to determine whether defendant was obliged by its contract to continue to cause these logs to be delivered at complainant's mill, complainant contending that the contract was made with reference to a custom, which in the delivery of these logs defendant had followed for seven years. It is contended by the defendant that evidence of a custom is inadmissible to vary the terms of a written contract, and that the custom proved, if admissible, has no bearing upon this case. The testimony of defendant's general superintendent, who acted for defendant in making this contract, shows that the yard at North Bay City is not a terminal, and had not been used as a place of delivery of car loads of logs or other car load freight; that at that place it has no terminal facilities, and the general practice has been to deliver car loads of logs and other car load freight for Bay City by transfer to the Michigan Central in the same manner that the Gates logs were delivered, until just before the complainant's bill was filed; that such delivery was, in his opinion, an accommodation or convenience to Mr. Gates and other shippers. The record shows that there are no sufficient conveniences in this yard to make delivery by unloading large quantities of sawlogs. Defendant insists that the contract determines where delivery was to be made, by the words, " We to haul your logs from town 24 (25) north, range 4 and 5 east, to North Bay City at the rate of $3.00 per thousand feet board measure."

The contract is specific as to the rate and haul, but it is silent as to delivery. A delivery was contemplated (the

158 MICH.—31.

usual and customary delivery to shippers of car load lots). A custom has been established by the evidence, which was in practice before the time of making this contract and ever since. The general superintendent's testimony admits such a custom, called by him an accommodation or convenience. That the practical construction of the parties for seven years as to the manner of delivery was in accord with such a custom is confirmatory that they contracted in contemplation of it. The evidence also shows that to unload these logs at North Bay City, or to transfer them from defendant's cars to others, would be "impracticable and prohibitive."

There remains to be considered the amount of overcharges paid to defendant as freight upon contract logs hauled. All shipments subsequent to January 1, 1905, are to be considered. It is unnecessary to make the computation. Defendant has been credited with the amount of difference in charges between contract and noncontract logs at 75 cents and $1.25 per thousand feet, which leaves a balance due complainant of $5,141.82, as found by the trial court.

The decree of the circuit court is affirmed, with costs.

OSTRANDER, HOOKER, MOORE, and BROOKE, JJ., concurred.