THE EPWORTH ASSEMBLY *v.* LUDINGTON & NORTHERN RAILWAY.

1. PLEADING—MOTION TO DISMISS—AFFIRMATIVE DEFENSES.
   Matters of affirmative defense not appearing in the bill must be set up in an answer and are not available on motion to dismiss.

2. EQUITY—JOINING EQUITABLE AND LEGAL CAUSES OF ACTION NOT CAUSE FOR DISMISSAL.
   Although plaintiff's bill stated grounds for equitable relief joined with a cause of action triable at law contrary to the provisions of 3 Comp. Laws 1915, § 12309, the court below was in error in dismissing the bill, since it does

not follow that because plaintiff was not entitled to all the relief sought it was not entitled to any.

3. SAME—INJUNCTION PROPERLY DENIED IN ADVANCE OF HEARING. The court below properly denied plaintiff's motion for a temporary injunction, where to have granted it would have given plaintiff all the relief asked for in advance of a hearing.

Appeal from Mason; Cutler (Hal L.), J.    Submitted April 17, 1923.    (Docket No. 73.)    Decided July 19, 1923.

Bill by The Epworth Assembly against the Ludington & Northern Railway for an injunction and other relief.    From an order granting a motion to dismiss, plaintiff appeals.    Reversed and remanded.

*Elvin Swarthout* and *Clay H. Olmstead,* for plaintiff.

*A. A. Keiser,* for defendant.

Plaintiff files this bill alleging that it was incorporated under the camp-meeting and assemblies act (2 Comp. Laws 1915, § 10062 *et seq.*) on May 23, 1894, as the Epworth League Training Assembly, later changed to its present name; that it acquired certain lands in Mason county fronting on Lake Michigan north of the city of Ludington; that they were acquired pursuant to a contract with the Citizens Development Company of Ludington and the Flint & Pere Marquette Railroad Company, and later confirmed by deed of the development company; that later it acquired an additional 80 acres on the shore of Lake Michigan.    It is alleged that the contract referred to contained the following paragraph:

"Said first party further agrees that commencing with the opening of the season of 1894, and during the season of 1894, and for all time during the life of said Epworth League Training Assembly they will

establish, furnish and maintain suitable conveyances to and from the depot and steamboat dock of the Flint & Pere Marquette Railroad Company to the grounds of said third party, at the rate of not to exceed five cents fare each way; and that it will establish, construct and operate a street railway or procure the same to be established, constructed and operated from said depot and steamboat dock to the grounds of said third party, at the earliest possible time and have the same in operation not later than July 1, 1896."

It is further alleged that the development company was composed of the leading citizens of Ludington and was organized to promote the growth of that city; that plaintiff held an assembly in the year 1894 and some cottages were built on its property that year; that the roads leading to plaintiff's grounds were of sand and a street railway was necessary to the success of the project, and that in the month of March, 1895, the members of the development company caused the incorporation under the train railway act of the Epworth League Railway (later changed to the Ludington & Northern Railway, defendant) and it is charged that the railway company assumed the provisions of the contract above quoted; the railway was constructed from the depot and docks to and upon plaintiff's property in the summer of 1895 and plaintiff conveyed a right of way "for the uses above expressed" and the railway was operated for a great many years, carrying passengers to plaintiff's grounds at a five-cent fare each way. Later the railway was extended to Hamlin, and it is alleged that it brought many people to plaintiff's grounds who contributed to their maintenance. By 1909 as appears by the bill upwards of 175 cottages had been erected on plaintiff's grounds and its desirable lots had been taken up. It thereafter acquired more land and platted and put on the market the North Shore addition and took up with

the railway company the question of extending its service to that addition; as a result of conferences the extension was made under a claimed oral agreement, plaintiff selling some $2,000 of the railway company's bonds and giving that company permission to cross its land and extend its track to a big sand hill known as Old Father Baldie for the purpose of shipping sand to parties in Ohio and elsewhere. The railway company proceeded to construct terminal buildings, a pump house, water tank and coal bins and commenced to ship sand over the line; this it is alleged caused annoyance and inconvenience to plaintiff's members. The plaintiff extended its sidewalks and water mains through the North Shore addition and made other improvements but the North Shore addition did not prove a success, but one cottage being erected in the addition and the passenger service to the addition was suspended. Plaintiff claims in its bill the following items of damage growing out of the situation thus created:

"$300 for surveying and platting said addition; to-wit: $1,000 the expense of extending and maintaining its water main thereto and the construction and maintenance of the bridge, sidewalks, station platform and so on; $200 in advertising said North Shore addition lots; and to-wit: $200 a year which it would have received from the rental of lots leased, had said railroad company continued its dummy service as agreed; which last mentioned item will be continuous for the future. And generally by rendering the entire of plaintiff's grounds less desirable for summer resort purposes where freedom from noise and noisome smoke, etc., are indispensable—a large sum, to-wit: $5,000. And in addition said railroad company has appropriated land owned by plaintiff, and not included in the right of way as originally laid out, and as subsequently conveyed by changing the course of its tracks at the north terminal of said extension, and by taking and shipping away sand belonging to plaintiff at that point, and is preparing to take more

of said lands and additional amounts of plaintiff's sand, to plaintiff's damages $5,000, and said railroad company—as plaintiff is informed and believes—proposes to continue and increase this work, to the additional damage of plaintiff in the future of $5,000."

The bill alleges that the deed conveying the right of way last named contained the proviso that the land was "to be used for railroad purposes." and alleges that the running of sand trains violated such proviso. It is alleged that in 1919 defendant announced that it would discontinue its dummy service to Epworth and Hamlin lake and did so and tore up its tracks in Charles street and Charles street extended. Defendant's counsel has quite fairly analyzed the prayer for relief and we, therefore, quote from his brief:

"The bill contains allegations upon which the following equitable relief is asked:

"*First.* A mandatory injunction to compel the relaying of tracks.

"*Second.* A mandatory injunction to compel the running of trains at a specified rate of fare.

"*Third.* A prohibitory injunction to prevent defendant from using its railroad track.

"*Fourth.* A prohibitory injunction to prevent defendant from hauling sand from and over plaintiff's premises.

"*Fifth.* For a construction of certain clauses of deeds.

"*Sixth.* That said deeds be decreed null and void and the title be decreed to be in plaintiff free of claim or license in favor of defendant.

"*Seventh.* That the court decree that defendant has assumed the obligations of the Citizens Development Company in its contract with plaintiff.

"*Eighth.* That the court decree the operation of the sand train a nuisance, and abate it.

"The bill also asks for relief in the following matters for which actions at law would lie and which present issues triable by a jury under rules of law:

"*First.* For damages claimed to have been suffered

223—Mich.—38.

by plaintiff because of the suspension of passenger service.

"*Second.* For prospective damage from the same cause.

"*Third.* The cost of survey of North Shore addition.

"*Fourth.* The cost of building and maintaining the foot bridge, sidewalk, station platform and steps.

"*Fifth.* The extension of the water main.

"*Sixth.* The advertising of the addition.  *  *  *

"*Seventh.* Past and prospective loss of annual dues from the North Shore addition leases.

"*Eighth.* Past and prospective losses to the general good of the resort.

"*Ninth.* Cost of cement sidewalks from the auditorium to dummy station.

"*Tenth.* For damages by fires caused by locomotives.

"*Eleventh.* For damage from smoke and noise of trains.

"*Twelfth.* Value of sand taken from north end of plaintiff's property.

"*Thirteenth.* Damage for destruction of scenic beauty of north end of plaintiff's property by removal of sand.

"*Fourteenth.* Other damage to plaintiff's grounds and golf fields caused by operation of trains.

"*Fifteenth.* Damage to scenic and artistic beauty to same.

"*Sixteenth.* Damage because of defendant having taken possession of plaintiff's land."

Defendant filed a motion to dismiss, alleging numerous grounds including a showing that the service had been abandoned by the defendant pursuant to an order of the (then) railroad commission. Most of the reasons urged for dismissal of the bill were held to be untenable by the trial judge, but one ground was held to be sufficient, *i. e.*, that the bill joined equitable and legal actions, contrary to the provisions of section 12309, 3 Comp. Laws 1915. At the same time he denied plaintiff's motion for a temporary injunction. Plaintiff appeals from both orders.

FELLOWS, J. (*after stating the facts*). Counsel have filed most elaborate briefs covering every conceivable phase of the case and in which every possible question which is liable to arise on a hearing is discussed. We shall not consider in advance of a hearing on the merits many of the questions discussed at length by counsel as the only questions necessary to decision are whether plaintiff may proceed with its case and whether it is entitled at this time to an injunction.

It is conceded on all hands that the plaintiff has stated a case for some equitable relief. While not conceded by plaintiff it must be held that plaintiff has also stated purely legal causes of action. The trial judge was right in holding that matters of affirmative defense not appearing in the bill must be set up in an answer and are not available on motion to dismiss. *Pagenkoff* v. *Insurance Co.*, 197 Mich. 166; *Vyse* v. *Richards*, 208 Mich. 383. The statute involved (3 Comp. Laws 1915, § 12309) provides that "legal and equitable causes of action shall not be joined." It is not good pleading to attempt to join them, but the question with which we are concerned is whether a bill should be dismissed which states an equitable cause of action joined with a cause of action triable at law. We think that under the former holdings of this court this question must be answered in the negative. Reliance is placed by defendant's counsel on the recent case of *Wellock* v. *Cowan*, 221 Mich. 58. In that case a large number of cases at law and suits in equity were consolidated by an order of the court. We set aside the order of consolidation. But it should be noted, and here is where that case is particularly applicable to the instant one, that inasmuch as the bill stated grounds for equitable relief we retained the bill and we there said:

"For these reasons we are moved to set aside the

order of consolidation and injunction. The bill will not be dismissed, as an accounting is prayed for between the bank and Binkle."

It has been held in numerous cases that a bill which sets up any grounds of equitable relief should not be dismissed on demurrer or motion to dismiss. Among them see *C. H. Little Co.* v. *Cemetery Ass'n,* 135 Mich. 248; *Watson* v. *Wagner,* 202 Mich. 397; *Dewey* v. *City of Flint,* 205 Mich. 195; and in *City of Saginaw* v. *Consumers' Power Co.,* 213 Mich. 460, we said:

"Because the city is not entitled to all the relief it asks it does not follow that it is not entitled to any."

Following the logic of these decisions we think it must be held that plaintiff's bill having stated grounds of equitable relief should not have been dismissed because it asked for relief it was not entitled to on the equity side of the court. The case of *Otto* v. *Village of Highland Park,* 204 Mich. 74, is clearly distinguishable from this case. There another provision of the same section of the statute was involved and it was held that separate and distinct causes of action against different defendants could not be joined where the action was not a joint one. The evidence against one defendant would not be applicable against another and no joint judgment could be rendered. Here there is one plaintiff and one defendant, and but one decree would be necessary.

We agree with the trial judge that a temporary injunction should not be granted. So to do would give plaintiff all the relief asked in advance of a hearing.

The decree must be reversed and defendant be given the usual time to answer. Plaintiff will recover costs of this court.

WIEST, C. J., and McDONALD, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.