CITY OF GRAND RAPIDS *v.* CENTRAL LAND CO.

1. INJUNCTION—MULTIPLICITY OF SUITS—STIPULATION—JURISDICTION.

In city's suit to enjoin two defendants from prosecuting actions of ejectment against city as to land which they had transferred to city for park and boulevard purposes, basing equitable jurisdiction in part upon avoidance of multiplicity of suits, stipulation of counsel for defendants that one defendant was willing to stipulate itself into the case which had already been commenced by other defendant rendered impotent such basis for jurisdiction.

2. SAME—DISCRETION OF COURT—TEMPORARY INJUNCTION.

The granting or refusal of a temporary writ of injunction is discretionary with the trial court.

3. SAME—ABUSE OF DISCRETION—EJECTMENT—DRILLING OIL WELLS.

Denial of temporary injunction to grantee under deeds of property for park and boulevard uses to restrain grantors from prosecuting ejectment actions and restraining grantors from drilling more oil wells on their adjacent land *held,* not an abuse of discretion.

4. SAME—QUIETING TITLE—REVERTER CLAUSE—THREATENED ACTIONS OF EJECTMENT.

Suit by city, grantee of lands under deeds containing reverter clauses in favor of defendant grantors, to restrain ejectment suits if plaintiff drilled oil wells on its property could not be maintained on ground that it was necessary to quiet title because threatened suits prevented plaintiff from securing anyone to drill for oil.

5. SAME—ACCOUNTING—ADEQUATE REMEDY AT LAW—OIL WELLS.

Grantee city under deeds containing reverter clauses in favor of defendant grantors has an adequate remedy at law for damages sustained by reason of any illegal acts of defendant grantors, owners of adjoining land, in draining off oil from plaintiff's land, if it can show cause for an accounting in equity for oil taken from plaintiff by either defendant, hence it may not maintain suit in equity to enjoin defendants from drilling more oil wells because of necessity for an accounting.

6. Same—Stipulations—Ejectment—Partial Relief.

That only a portion of lands involved in transaction taken as a whole are involved in pending ejectment action against plaintiff herein would not be ground for restraining prosecution of such action where counsel for owner of balance of lands agreed to stipulate such owner into pending ejectment case and be bound by result so as to try title to plaintiff's land.

7. Equity—Jurisdiction—Quieting Title—Injunction.

The chancery court is given authority to remove clouds from title, to enjoin ejectment actions where multiplicity of suits would be avoided and to grant relief required to do full justice between the parties.

8. Appeal and Error—Injunction—Multiplicity of Suits—Stipulations—Allegations of Bill Taken as True on Motion to Dismiss.

On appeal from order granting defendants' motion to dismiss bill to enjoin two defendants from maintaining two separate ejectment actions against plaintiff, Supreme Court must assume all allegations of fact contained in the bill of complaint to be true although in determining the question it could and should take into consideration the stipulation of counsel for one defendant agreeing to be bound by the pending action against the other defendant.

9. Quieting Title—Jury—Ejectment—Statutes.

Statute authorizing prosecution of suits in chancery court by party claiming legal or equitable title against parties not in possession who set up a claim in opposition thereto does not afford jurisdiction to such court to entertain suit to enjoin ejectment action already commenced and deprive plaintiff therein of right to trial by jury and permit defendant in ejectment to elect in which court he would try question of title (3 Comp. Laws 1929, § 13944, as amended by Act No. 41, Pub. Acts 1939).

10. Injunction—Multiplicity of Suits—Stipulations—Title—Reverter.

In suit by city, grantee under deeds containing reverter clauses in favor of defendants who owned adjoining lands, to restrain separate actions of ejectment, where it appears that the real question involved is one of title and the bill contains no allegation of fraud, accident, mistake or other ground of equity jurisdiction, other than multiplicity of suits, and counsel for one grantor stipulated his agreement to be bound by result of

other grantor's action of ejectment, dismissal of bill was not error (3 Comp. Laws 1929, § 13944, as amended by Act No. 41, Pub. Acts 1939).

Appeal from Superior Court of Grand Rapids; Taylor (Thaddeus B.), J.   Submitted April 18, 1940. (Docket No. 127, Calendar No. 41,048.)   Decided June 4, 1940.

Bill by City of Grand Rapids, a municipal corporation, against Central Land Company, Pere Marquette Railway Company, and Rex Oil & Gas Company, Michigan corporations, to enjoin prosecution of an ejectment suit, to quiet title, for an accounting and other relief.  Bill dismissed.  Plaintiff appeals. Affirmed.

*Ganson Taggart, Harold B. Corwin* and *Clifford C. Christenson,* for plaintiff.

*Norris, McPherson, Harrington & Waer (John C. Shields, William R. Althans* and *Arthur W. Penny,* of counsel), for defendants Central Land Company and Pere Marquette Railway Company

CHANDLER, J.   This suit was instituted in the superior court of Grand Rapids, in chancery, by the filing of a bill of complaint by the city of Grand Rapids against the Central Land Company, the Pere Marquette Railway Company and the Rex Oil & Gas Company to enjoin the land company from the prosecution of an ejectment suit instituted by said company against plaintiff and the defendant Rex Oil & Gas Company, which ejectment action is now at issue and ready for trial in the circuit court for the county of Kent; also, to restrain the defendant Pere Marquette Railway Company from instituting a threatened similar ejectment suit against the city and the oil and gas company.

In the instant suit the Rex Oil & Gas Company is a nominal defendant, no relief being sought against it by the city in its bill of complaint.

We submit a brief statement of the facts involved as set forth in plaintiff's bill of complaint.

Sometime in the year 1937, plaintiff, contemplating a park and boulevard project, sought to obtain from the defendants, Pere Marquette Railway Company and Central Land Company, approximately 42 acres of land owned by these companies on the south bank of the Grand River in the city of Grand Rapids. The city was the owner of a four-acre parcel of land in the same general location which the defendant railway company was desirous of acquiring, and after a period of negotiations between the city and the railway and land companies, an agreement was entered into providing for the exchange by the land and railway companies of the 42 acres of land owned by them for the four-acre parcel owned by the city.

After this agreement had been reduced to writing and executed by all parties, the proposition for such exchange was submitted to the electors of the city as provided by charter and was duly approved by them. Subsequently, deeds were executed in consummation of the agreement. The deeds given by the railway company and the land company to the city each contained the following condition:

"This conveyance is given upon the express condition that the two parcels of land above described shall be used solely for park, highway, street or boulevard purposes; and if any part thereof be not used for any of such purposes, or at any time cease to be used for such purposes, or at any time be used for any other purpose, said part or parts shall immediately revert to the grantor, its successors, or assigns; and it shall be lawful for the grantor, its successors or assigns, to reenter and repossess the

same or any part or portion thereof, and thereafter to peaceably hold and enjoy the same as if these presents had not been made.''

It should be stated that as a further consideration for the execution of the deeds by the said land and railway companies, the city was to grade, construct and maintain certain highways along the land to be conveyed to it by the railway company, and over and across a portion of the land conveyed by the land company to the city, and plaintiff alleges in its bill of complaint that it duly entered upon the construction of said highways as provided in the contract.

The bill of complaint alleges that some time after the execution and delivery of the deeds, plaintiff was advised the defendant Central Land Company was drilling oil wells near plaintiff's land, which it had acquired from said land company, and being fearful that the wells so drilled would drain the oil and gas from the lands conveyed to the city, entered into a contract with the defendant Rex Oil & Gas Company to drill for oil upon plaintiff's land acquired from the land company, the lease bearing date of July 12, 1939, and was to continue in effect so long as the oil company should prosecute with reasonable diligence the drilling for oil and for so long as oil was produced in quantities of five barrels or more per day. The bill further alleges that the oil company has, by virtue of the lease, caused to be moved upon the land derricks, drilling machinery and tools, and has commenced operations to drill for oil and/or gas and that they continued to do so until an action of ejectment was instituted by the land company, since which time the oil company has ceased operations and refuses to carry out its contract with plaintiff. The bill also alleges that the oil company was to receive for the use of its derricks, drilling machinery, pipe lines and pumps and labor five-eighths of all

oil and/or gas produced, the remainder to belong to the city to be used exclusively for park and boulevard purposes. It is also alleged that plaintiff contemplates and has contracted for the drilling for oil and/or gas on the lands acquired by the city from the railway company, and that it has received notice from the said railway company that it would at once, upon the commencement of such operations by the city, institute an action of ejectment against the latter similar to the action already instituted by the land company. The bill also alleges that it is necessary for the plaintiff, in order to preserve its rights in the oil in the land conveyed to it, to drill off-set wells to those which the land company has drilled and which the railway company contemplates drilling to prevent them from draining off and taking from plaintiff the oil under plaintiff's land; that the oil under plaintiff's land is of an estimated value of $200,000; and that it will be deprived of the said revenues if defendants are not restrained in the action already instituted by the land company and the one contemplated by the railway company.

Plaintiff contends by its bill of complaint that it is the owner of all oil rights in the lands it acquired from defendants, and that the reverter clauses in the deeds hereinbefore referred to are without consideration. It further claims that the action instituted by the land company, and the action threatened by the railway company, is a cloud upon its title to the lands and if it is permitted to have the controversy between it and the land and railway companies adjudicated by a court of chancery in this suit a multiplicity of suits will be avoided.

The record discloses that after the filing of the bill of complaint, plaintiff moved the court to grant a temporary injunction, restraining the prosecution of the land company's ejectment suit and the institu-

tion of a suit by the railway company, as well as for a temporary injunction restraining defendants from drilling any more oil wells on their land adjacent to that of plaintiff. When this motion was brought on for hearing, Mr. Shields, counsel for defendants Central Land Company and Pere Marquette Railway Company, offered the following stipulation in open court:

"Your Honor will understand there is now pending in this court a suit which was instituted by the Central Land Company in ejectment; a suit by which this entire question may be tried and determined with dispatch. The Central Land Company is willing to have that case brought on for an early trial to meet the convenience of counsel for the city. The Pere Marquette Railway Company is willing to stipulate itself into that case so that the entire controversy may be tried and determined before the end of this year. But neither the Central Land Company nor the Pere Marquette Railway Company is willing to try out title in equity. The proper place to try title is in ejectment and on the law side of the court. The fact that there is a case pending in which the question of title is involved, in and of itself defeats counsel's case here, because there isn't a case in Michigan, and there isn't a case anywhere which holds that where there is a case pending before the court in which the title may be tried and determined, equity will intervene and take that case from the law side of the court. On the contrary, the cases are just the other way."

Immediately following this offer, counsel for the same defendants made the following motion:

"Now, then, so as to bring the issues before your Honor, the defendant Central Land Company and the defendant Pere Marquette Railway Company come now in open Court and move that the plaintiff's bill of complaint be dismissed for the following grounds:

"1. That equity does not have jurisdiction.

"2. That the bill of complaint in this case has not made a case sufficient, in law, for the granting of the relief prayed, or any other relief for that matter.

"3. There is a case now pending in which the issue as stated by counsel for plaintiff has been raised and must be decided.

"4. Because the action sought by the complainant takes from the defendants their constitutional right of trial by jury."

After argument on the motion, the court said:

"I think on the motion for temporary injunction, you may prepare an order denying the motion. The temporary injunction as I understand is simply to restrain them from drilling any more oil wells. In other words, what the plaintiff is asking in this case is a temporary injunction to restrain the Pere Marquette Railway Company and the Central Land Company from drilling and continuing further drilling operations on their land that is contiguous and adjacent to the land which the city claims they have a right to drill upon.

"*Mr. Taggart* (counsel for plaintiff): If you are going to deny the injunction as to the ejectment case, I rather you grant the motion to dismiss the chancery case and throw the whole thing out and then we will have a final order and know where we stand. It is practically the same thing when you deny our application for an injunction.

"*Mr. Shields:* We will consent to that.

"*The Court:* Very well, it may be so ordered."

The court then entered the following order:

"This cause came on to be heard upon the application of the plaintiff for the issuance of preliminary injunctions and upon the motion of the defendants Central Land Company and Pere Marquette Railway Company made in open court that the suit be dismissed; and the court having heard the arguments

of counsel, and having considered the matters at issue, It is ordered that plaintiff's bill of complaint be and it hereby is dismissed.''

From this order, plaintiff appeals, setting forth as reasons and grounds therefor:

"(1) Because said bill sets up grounds giving the court jurisdiction of the case:

"a. It alleges multiplicity of suits;

"b. It shows the need for an injunction to avoid irreparable injury, in that lack of such injunction would bar plaintiff from realizing on its property and the same would be secured by the defendants;

"c. It is necessary to quiet title to the land not involved in the ejectment suit and adjoining land held by the defendant, Pere Marquette Railway Company, for which they publicly threaten suit if the city should drill for oil. This threat prevents the city from securing anyone to drill for oil and deprives it of the beneficial use of its property;

"d. It alleges and shows the necessity for an accounting in equity for the oil taken by defendants, the Central Land Company and the Pere Marquette Railway Company.

"(2) Because the ejectment suit at law now pending, injunction against which is sought, involved but a portion of the land involved in the contract and deeds, which were all a part of one transaction.

"(3) Because by statute, the chancery court is given express authority to remove clouds from title, and it may enjoin ejectment suits where multiplicity of suits would be avoided and to grant the general relief required to do full justice.

"(4) Because said court erred in granting the motion to dismiss for each and every ground set forth in said motion, as the same were negatived, and each and every one of them, by the allegations in the bill of complaint.''

We will discuss these various claims in the order in which they are above set forth.

(1) a. If there was merit to this claim, it was rendered impotent by the stipulation offered by counsel for the defendants upon the hearing on the motion as hereinbefore set forth in full. b. The granting or refusal of a temporary writ of injunction is discretionary in the trial court and in this case it fairly appears to us that such discretion was not abused. c. This contention is without merit. d. Plaintiff has an adequate remedy at law against defendants for any damages it may sustain by reason of any illegal acts on the part of the defendants or either of them. If it can show cause for an accounting in equity for the oil taken by the defendants, or either of them, it can recover therefor in an action at law.

(2) At the present time it is true that only a portion of the lands involved in the transaction taken as a whole are involved in the ejectment suit now pending, but if the offer of counsel for defendant railway company to be bound by the result of the suit between the land company and the city is accepted, then the matters involved in the whole transaction may be determined in the pending ejectment case, and plaintiff's title to the lands in suit adjudicated.

(3, 4) It is true as contended by plaintiff that the chancery court is given authority to remove clouds from title, and may enjoin ejectment suits where multiplicity of suits would be avoided, and to grant relief required to do full justice between the parties. This contention, unlike the other questions involved, merits some discussion, and in the discussion we must assume all of the allegations of fact contained in the bill of complaint to be true, although in the determination of the question, we have a right to and shall take into consideration the stipulation proffered by counsel for defendant railway company

to be bound by the pending ejectment action against plaintiff by the land company.

Concerning ourselves solely with the allegations of fact in the bill of complaint and not with the conclusions therein set forth, we find that the real question involved is one of title. The bill contains no allegation of fraud, accident, mistake or other ground of equity jurisdiction, other than that a multiplicity of suits will be avoided by equity assuming jurisdiction and granting a hearing of the controversy existing between plaintiff and defendants.

Plaintiff insists upon its right to maintain this bill under 3 Comp. Laws 1929, § 13944, as amended by Act No. 41, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 13944, Stat. Ann. 1939 Cum. Supp. § 27.545), which provides in part:

"The powers and jurisdiction of the circuit courts and circuit judges in chancery, in and for their respective counties, shall be co-extensive with the powers and jurisdiction of the courts and judges in chancery in England as existing on March first, eighteen hundred forty seven, with the exceptions, additions and limitations created and imposed by the Constitution and laws of this State. Said circuit court in chancery shall also have jurisdiction and authority: * * *

"4. To hear and determine suits instituted by any person claiming the legal or equitable title to lands, whether in possession or not, against any other person not in possession, setting up a claim thereto in opposition to the title claimed by plaintiff: And, if the plaintiff shall establish his title to such lands, the defendant shall be decreed to release to the plaintiff all claims thereto."

Plaintiff strenuously contends that the foregoing statutory provision gives it ample authority to maintain its bill of complaint to enjoin the ejectment suits

and to clear its title of the reverter provision in its deeds of conveyance, which, it alleges, is a cloud upon its title to the premises in question. Plaintiff cites and quotes from numerous cases in this jurisdiction which it claims supports this contention. We think the opinion of Mr. Justice FELLOWS in *Carpenter* v. *Dennison,* 208 Mich. 441, clearly demonstrates the inapplicability of the cases cited by plaintiff to the question involved in the instant case. A brief review of the facts in the *Carpenter Case* and of the conclusions reached, we think, will be quite enlightening as well as determinative of the issue here involved.

The defendant Dennison in the above-cited case brought suit in ejectment against the plaintiffs to recover possession of certain lands in Kent county. Soon after the commencement of the ejectment case, plaintiffs filed their bill of complaint in the circuit court in chancery to quiet their title to the premises in question and to restrain the further prosecution of the ejectment case. There, as here, the plaintiffs claimed a legal record title and did not allege fraud, accident, mistake or other grounds of general equity jurisdiction, nor did they point out any impediment in their defense in the action of ejectment which was pending. Defendant moved to dismiss the bill on jurisdictional grounds, which motion was overruled, and defendant answered, reserving to himself "all right of exception to the said bill of complaint," and upon the hearing contended that a court of equity was without jurisdiction to entertain the bill to quiet title and to restrain the further prosecution of the action pending in the court which first obtained jurisdiction of the controversy between the parties. The plaintiffs, there as here, insisted upon their right to maintain their bill of complaint under the provisions of the statute above quoted. In disposing of the question, we said:

"While this subdivision of the section in its present form is the result of amendments, it originally was enacted in 1840 (Act No. 76, Laws 1840, p. 127). It has generally been recognized as declaratory of recognized jurisdiction of the courts of equity with amplification of their powers, and its object has been recognized by this court to be to enable one in possession of real estate (now including one out of possession where the other party is also out of possession) to remove all doubts as to his title caused by claims of third persons who are taking no steps to test the validity of their claim and who by their refusal or neglect to take proceedings to have their title adjudicated cast a doubt upon the title which without the interposition of a court of equity remains a cloud upon such title to the injury of the true owner. But it has never been held, as we shall presently see, that the object of the act was to afford a defendant in an ejectment suit the option to deprive the plaintiff of his right to a trial by a jury, and permit him to elect in which court he would try the question of title."

A review of the authorities bearing upon this question clearly indicates that this court has universally adhered to the rule so clearly set forth in the foregoing excerpt from *Carpenter* v. *Dennison, supra.*

We find no error on the part of the trial court in the entry of the order dismissing plaintiff's bill of complaint. The order is, therefore, affirmed, with costs to defendants railway company and land company against plaintiff.

BUSHNELL, C. J., and SHARPE, POTTER, NORTH, MC-ALLISTER, and BUTZEL, JJ., concurred with CHANDLER, J. WIEST, J., concurred in the result.