BAERLIN *v.* GULF REFINING COMPANY.

1. EQUITY—LACHES.
   Laches is an equitable concept not governed by rigid rules, involving such inaction over a period of time as to make it inequitable to assert a right because of change of conditions.

2. COVENANTS—ESTOPPEL AS TO ENFORCEMENT OF RESTRICTIONS—EVIDENCE.
   Plaintiffs, owners of lot next south of defendant's 4 lots, the southernmost of which and plaintiffs' lot were subject to residential restrictions in plat of subdivision *held*, not to have been estopped from enforcing the violation of such restriction, under record showing repeated and effective remonstrances as to violating uses theretofore made of the property.

3. SAME—WAIVER—ESTOPPEL—LACHES.
   Waiver, estoppel, or laches with respect to enforcement of reciprocal negative easements created by restrictions placed upon subdivision plat, depend upon the facts of each case.

REFERENCES FOR POINTS IN HEADNOTES

[1] 19 Am Jur, Equity § 490.
[2, 3] 14 Am Jur, Covenants, Conditions and Restrictions § 35.
   Waiver of, or estoppel to assert, condition subsequent or its breach. 39 ALR2d 1116.

Appeal from Wayne; Smith (Raymond L.), J., presiding. Submitted April 7, 1959. (Docket No. 8, Calendar No. 47,697.) Decided June 6, 1959.

Bill by Enos Baerlin and Esther Baerlin against Gulf Refining Company, a Delaware corporation, to enjoin use of property contrary to building restrictions. Decree for plaintiffs. Defendant appeals. Affirmed.

*Dwyer & Hennes,* for plaintiffs.

*Ray Cashen* and *Robert S. Axford,* for defendant.

SMITH, J. Here we have a matter relating to the enforcement of building restrictions upon residential property.

Plaintiffs Enos and Esther Baerlin, husband and wife, purchased their home in the year 1936. It was in Maplewood Park subdivision, facing on what is now known as Horger avenue, located in the city of Dearborn, between Ford road and Michigan avenue. It is agreed that the said subdivision is subject to a general plan of restrictions, and that lot 444 (on which stands plaintiffs' home) and lot 445, immediately adjacent to the north, are subject to reciprocal negative easements arising out of covenant restrictions in the plat, and expressed in the following language:

"Either a single private residence or 2-family residence may be erected on said lot * * * the building to be used for residence purposes only."

Upon lots 446, 447, and 448, running south in inverse numerical order from the corner of Ford and Horger, defendant operates a service station. The use and employment of such lots is not an issue in this case. We are concerned with lot 445, the one

next to plaintiffs' home. Simply put, plaintiffs assert that it is used as a parking lot in connection with a service station, that such use violates the said restriction, and that as a result they are subjected to exhaust fumes, dust, noise, and loud talk, cursing and swearing, both during the daytime and at night. ("We get those fumes from those cars when we are sleeping. They start them up and race the motors, sometimes, and let them stand there and run. The taxies come in anytime, and they push the cars sometimes if they don't start. * * * We have dust in our rooms, our bedrooms are just full of dust. We can't even sleep in the windows in the summertime.") The record shows that plaintiffs' home comes to within approximately 3 feet south of the lot line, and that defendant's parking rail is approximately 10 feet north of the line, a distance of some 13 feet, thus separating plaintiffs' home from the parked cars.

Defendant replies to this, in substance, that plaintiffs are in no position to complain, that they stood idly by and permitted violative uses through the years, even participated in some themselves, and that their alleged silent acquiescence estopped them to complain thereof, and constituted laches and a waiver of their asserted right to enforce such restriction with respect to the parking and ingress and egress uses of lot 445. Plaintiffs denied such acquiescence, asserting, on the contrary, that they had "at all times objected to any use attempted other than residential use and continuously fought against even temporary and transient attempts at violation." Issue was thus joined, trial had, and decree entered in favor of plaintiffs on their bill of complaint for injunctive relief. Before us, upon appeal, defendant again asserts the defenses of estoppel, laches, and waiver.

The record discloses a series of intermittent users of lot 445 inconsistent with the restrictions imposed upon such lot. Interspersed therewith, however, was affirmative action on plaintiffs' part. Enos Baerlin objected thereto. He "complained to the public works" about the use of a small structure on the rear of lot 445 for living purposes, about an ice house which at one time was located towards the front of lot 445, to the operator thereof, and "to the city hall," finally causing action to be instituted with respect thereto, as a result of which it was removed, and he was active in enlisting the support of his neighbors in opposing defendant's petition to the city of Dearborn to use lot 445 for off-street parking. Exhibit 5 reads as follows:

"We, the citizens of Dearborn, living in the vicinity of Ford road and Horger (Maplewood Park subdivision) vigorously object to the rezone of lot 445, Maplewood Park subdivision. Furthermore, we have complained about this lot being used as a parking lot for junk trucks and cars of all descriptions and the fact that there is an old dilapidated, run-down garage home on the rear."

Whether these complaints were directed against violation of restrictive covenants or zoning regulations, and whether the complaints were lodged with those technically the proper persons to take action thereon, there was clearly no waiver by inaction, nor were plaintiffs guilty of laches. Laches is an equitable concept not governed by rigid rules. At its heart, as well as that of waiver as here asserted, is inaction and sleeping on one's rights, with the result that, with the passage of time and change of conditions, assertion of the right becomes inequitable. Primarily, and in the context before us, laches or estoppel depends upon the facts of each case. *Boston-Edison Protective Ass'n* v. *Allen*, 293 Mich

668; *Longton* v *Stedman*, 182 Mich 405. The trial chancellor concluded as follows:

"Was the right to enforcement of the restriction as to lot 445 waived? The court has given careful consideration to the uses made of lot 445 since 1927. For the most part they were of a temporary nature. No permanent structure was erected and no rights claimed by anyone that would serve to put plaintiff or any other lot owner on notice that lot 445 would henceforth be commercial property. No one changed his position or was misled by the inaction of plaintiff or others. When it became apparent to plaintiff that the owner of lot 445 was about to use it for commercial purposes he promptly filed this suit."

And, also:

"The court is of the opinion that plaintiffs have not waived their right to enforce the restriction nor have they been guilty of laches."

Upon the record made, we find no error in the chancellor's conclusions. Decree affirmed, with costs to appellees.

Dethmers, C. J., and Carr, Kelly, Black, Edwards, Voelker, and Kavanagh, JJ., concurred.