ATTORNEY GENERAL v THOMAS SOLVENT COMPANY

Docket No. 78128. Submitted May 13, 1985, at Lansing.—Decided
October 7, 1985. Leave to appeal applied for.

The Attorney General and others brought an action against the
Thomas Solvent Company in the Calhoun Circuit Court alleg-
ing violation of the water resources commission act and the
Thomas J. Anderson, Gordon Rockwell Environmental Protec-
tion Act and the creation of a public nuisance. They sought a
preliminary injunction, damages and penalties. Plaintiffs
claimed that Thomas Solvent was polluting the groundwater
around its business locations. Grand Trunk Western Railroad
Company was added as a defendant. The court, James C.
Kingsley, J., granted a preliminary injunction against Thomas
Solvent requiring certain affirmative acts after finding that an
immediate threat of potentially irreparable harm to the public
health existed at the defendant's two facilities and that imme-
diate correction was necessary to remove the contaminants
from the groundwater, stop encroachment of the contaminants
onto unpolluted land, and halt the hydrological movement of
the contaminated water beneath the two facilites. Thomas
Solvent appealed by leave granted. Held:

1. The grant or denial of a preliminary injunction is within
the discretion of the trail court. The object of a preliminary
injunction is to preserve the status quo so that upon the final

REFERENCES FOR POINTS IN HEADNOTES

[1] Am Jur 2d, Injunctions §§ 24, 25
Preliminary mandatory injunction to prevent, correct, or reduce
effects of polluting practices. 49 ALR3d 1239.
[2] Am Jur 2d, Injunctions § 23.
[3] Am Jur 2d, Actions § 90.
[4] Am Jur 2d, Equity §§ 131 et seq.
See the annotations in the ALR3d/4th Quick Index under Equity.
[5] Am Jur 2d, Pollution Control §§ 155, 211, 243.
Pre-emption, by provisions of Clean Air Act (USCS §§ 7401 et seq.),
of federal common law of nuisance in area of air pollution. 61
ALR Fed 859.
Construction and application of pre-emption sections (§§ 208,
210(c)(4)) of Clean Air Act (42 USCS §§ 1857f-6a, 1857f-6c(c)(4)). 18
ALR Fed 971.

hearing the rights of the parties may be determined without injury to either. The status quo to be preserved is the last actual, peaceable, noncontested status which preceeded the pending controversy. An injunction should not be granted unless the party requesting it satisfies the court that he will otherwise suffer irreparable injury and that he does not have an adequate remedy at law, and a preliminary injunction should not be issued if it will grant one of the parties all the relief requested prior to a hearing on the merits.

2. The trial court carefully considered the defendant's financial ability to comply with the preliminary injunction and did not abuse its discretion.

3. The preliminary injunction did not grant plaintiffs all the relief prayed for.

4. The preliminary injunction did not grant relief beyond that necessary to preserve the status quo.

5. The evidence was sufficient to establish a likelihood of plaintiff's success on the merits and a likelihood of irreparable or immediate harm.

6. Defendant failed to show that the expedited hearing held pursuant to the court rules denied it due process.

7. Defendant failed to establish the defense of laches by failing to establish prejudice to it and a lack of due diligence on the part of plaintiffs. Further, defendant is not entitled to the defense since it refused for two years to comply with the Department of Natural Resources' request that tests be conducted to determine the cause of the contamination.

8. The Comprehensive Environmental Response, Compensation and Liability Act does not preempt state law or preclude a state from duplicating liability imposed under the act. Thus, the court did not lack jurisdiction, not should it decline the exercise of that jurisdiction.

Affirmed.

1. INJUNCTIONS — PRELIMINARY INJUNCTIONS.

The grant or denial of a preliminary injunction is within the discretion of the trial court; the object of a preliminary injunction is to preserve the status quo so that upon the final hearing the rights of the parties may be determined without injury to either; the status quo to be preserved is the last actual, peaceable, noncontested status which preceded the pending controversy.

2. INJUNCTIONS — EQUITY — PRELIMINARY INJUNCTIONS.

An injunction should not be granted unless the party requesting

it satisfied the court that he will otherwise suffer irreparable injury and that he does not have an adequate remedy at law; a preliminary injunction should not be issued if it will grant one of the parties all the relief requested prior to a hearing on the merits.

3. ACTIONS — DEFENSES — LACHES.
    The successful assertion of a defense of laches requires a showing of passage of time combined with some prejudice to the party asserting the defense.

4. EQUITY — CLEAN HANDS.
    One who seeks equity must do or offer to do equity.

5. ENVIRONMENT — PREEMPTION — COMPREHENSIVE RESPONSE, COMPENSATION AND LIABILITY ACT.
    The Comprehensive Environmental Response, Compensation and Liability Act does not preempt state law or preclude a state from duplicating liability imposed under the act (42 USC 9614[a]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Stewart H. Freeman* and *Robert P. Reichel,* Assistants Attorney General, for plaintiffs.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *Stephen D. Turner* and *James R. Puggish),* for Thomas Solvent Company.

Before: T. M. BURNS, P.J., and ALLEN and M. J. TALBOT,* JJ.

T. M. BURNS, P.J. Defendant Thomas Solvent Company (hereinafter defendant) appeales by leave granted from an order of the trial court granting a preliminary injunction to abate a public nuisance pursuant to GCR 1963, 782, now MCR 3.601.

In September, 1981, public health officials discovered that the water drawn from 10 of 30 wells

* Recorder's court judge, sitting on the Court of Appeals by assignment.

which supply water to the City of Battle Creek were contaminated with toxic organic chemicals. Similar contaminants were also found in even higher concentrations in approximately 80 nearby private residential water supply wells. The 30 wells which supply the City of Battle Creek with its water are located in the Verona Well Field which is located just north of the defendant's facitlity. The private residential wells which are contaminated are located approximately 800 feet northwest of defendant's facilities.

Defendant is engaged in the business of selling industrial solvents and other chemicals and transporting liquid waste to recycling and disposal facilities. Defendant maintains two facilities in the Battle Creek area, the Raymond Road Facility and the Emmett Street Facility. Both of these facilities are located in Emmett Township, Calhoun County, and are a short distance from the Verona Well Field and the contaminated private wells.

At these two facilites, defendant stores a number of industrial solvents in 55-gallon drums. Defendant also has a number of underground tanks on these facilities in which defendant stores such solvents as xylene, toluene, trichloroethylene, perchloroethylene, and 1-1-1 trichloroethane, among others. Defendant uses hoses to transfer these chemicals in the underground tanks to other underground tanks and to trucks.

From 1981 through 1982, a number of soil and water samples were taken from the Verona Well Field area and defendant's facilities sites. Tests were performed with these samples by several federal, state and private agencies, including the United States Environmental Protection Agency (EPA), Michigan Department of Natural Resources (DNR), Michigan Department of Public Health and a Chicage-based technical assistance team known

as Ecology and Environment Incorporated. From these tests, officials discovered the existence of a high level of toxic contaminants in the wells and on defendant's property. Accordingly, the EPA designated the Battle Creek Verona Well Field as a "superfund" site on its national priority list under 42 USC 9601 *et seq.*

Because of the strong correlation between the types of contaminants found in the soil at both the Raymond Facility and the Emmett Street Facility, and the types of solvents and chemicals discovered in the wells downstream from defendant's site, it was determined by plaintiffs that defendant was at least partially responsible for the groundwater pollution. Therefore, on January 12, 1984, plaintiffs filed the instant complaint against defendant seeking a preliminary injunction, damages, and penalties. Plaintiffs' complaint alleged that defendant had violated § 6(a) and § 7 of the water resources commission act, MCL 323.1 *et seq.;* MSA 3.521 *et seq.,* the Thomas J. Anderson, Gordon Rockwell Environmental Protection Act, MCL 691.1201 *et seq.;* MSA 14.528(201) *et seq.,* and had unlawfully committed a common-law public nuisance.

The trial court held hearings pursuant to GCR 1963, 782, in February, March and April, 1984. On May 2, 1984, the trial court issued a preliminary injunction after finding that an immediate threat of potentially irreparable harm to the public health existed at the defendant's two Battle Creek facilities and that immediate correction was necessary to remove the contaminants from the groundwater, stop encroachment of the contaminants onto unpolluted land, and halt the hydrological movement of the contaminated water beneath the two facitlites owned by defendant. The order required defendant to install two groundwater purge

wells and two monitoring wells and to treat all purged groundwater with a granular activated carbon filtration system. The order also contained requirements as to the operation of the purge well and treatment system, including the requirements that defendant engage in frequent water sampling and testing procedures. Finally, the order specifically allowed either party to petition the court to modify the purge well and treatment system as necessary.

We note that, while the trial court proceedings were pending, defendant filed a petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Michigan. After a hearing, the bankruptcy court determined that the entry of the circuit court's preliminary injunction did not violate the automatic stay provision of the Bankruptcy Code. Subsequently, however, the bankruptcy court issued a preliminary injunction enjoining all further proceedings to enforce the circuit court's preliminary injunction. While the backruptcy court's injunction may make this appeal moot, defendant does not provide us with a copy of the bankruptcy court's order. The parties also do not argue that this appeal is moot. Since the validity of the bankruptcy court's injunction is seriously in question, *Penn Terra Ltd v Pennsylvania Dep't of Environmental Resources,* 733 F2d 267 (CA 3, 1984), we will consider the merits of this case.

In *Bratton v DAIIE,* 120 Mich App 73, 79; 327 NW2d 396 (1982), this Court set forth the standards for reviewing the grant of a preliminary injunction:

"The grant or denial of a preliminary injunction is within the sound discretion of the trial court. *Grand Rapids v Central Land Co,* 294 Mich 103, 112; 292 NW 579 (1940); *Michigan Consolidated Gas Co v Public*

*Service Comm,* 99 Mich App 470, 478; 297 NW2d 874 (1980). The object of a preliminary injunction is to preserve the status quo, so that upon the final hearing the rights of the parties may be determined without injury to either. *Gates v Detroit & M R Co,* 151 Mich 548, 551; 115 NW 420 (1908). The status quo which will be preserved by a preliminary injunction is the last actual, peaceable, noncontested status which preceded the pending controversy. *Steggles v National Discount Corp,* 326 Mich 44, 51; 39 NW2d 237 (1949); *Van Buren School Dist v Wayne Circuit Judge,* 61 Mich App 6, 20; 232 NW2d 278 (1975). The injunction should not be issued if the party seeking it fails to show that it will suffer irreparable injury if the injunction is not issued. *Niedzialek v Barbers Union,* 331 Mich 296, 300; 49 NW2d 273 (1951); *Van Buren School Dist, supra,* p 16. Furthermore, a preliminary injunction will not be issued if it will grant one of the parties all the relief requested prior to a hearing on the merits. *Epworth Assembly v Ludington & N R Co,* 223 Mich 589, 596; 194 NW 562 (1923). Finally, a preliminary injunction should not be issued where the party seeking it has an adequate remedy at law. *Van Buren School Dist, supra,* p 16." See also *Council 25, AFSCME v Wayne County,* 136 Mich App 21, 25-26; 355 NW2d 624 (1984).

We first consider whether the trial court failed to consider the substantial harm the preliminary injunction would cause defendant. Defendant refers to the trial court's statement that its order was "without reference to the ultimate full ability to pay the costs". Defendant argues that this illustrates that the trial judge was only concerned with cleaning up the site and did not care how much it cost nor what defendant's ability to pay was. We do not view isolated portions of the transcript out of context. The trial court also stated that "I am sensitive to the fact that an injunction would necessarily bring about some degree of hardship on the defendant". The court further stated:

"I have compared the relative hardships imposed on the parties, and I recognize there are financial hardships on the part of the defendant, but I think that those financial hardships are not as significant as the hardships imposed on the public through the contamination of the ground water."

Contrary to defendant's assertions, the trial court carefully considered the defendant's ability to pay for the clean-up. We specifically note that the trial court did not order the most costly clean-up procedures requested by plaintiff, but instead ordered more conservative measures.

We do not feel that the trial court abused its discretion. Plaintiff's experts testified that the groundwater contaminated by defendant's facilities contained extremely high levels of pollutants such as 53,000 parts per billion of TCE, 78,000 parts per billion of PCE, 8,300 parts per billion of dichloroethane, and 1,700 parts per billion of carbon tetrachloride. According to the experts, the presence of these contaminants establish the existence of an emergency situation which had to be stopped immediately to prevent nearby areas from becoming contaminated. These experts also testified that exposure to these chemicals posed substantial risks to individuals including the significant increased risk of developing cancer, detrimental effects on the liver and kidneys, muscular uncoordination, the development of fluid in the lungs, and intoxicating effects such as problems with balance and behavioral changes. Some of these chemicals were also flammable. It is clear that the record supports the trial court's finding that defendant's financial harm was outweighed by the public's health risk. Defendant's reliance on an isolated statement by the trial court does not show that the court abused its discretion.

Defendant next claims that the injunction

granted all of the relief plaintiffs requested. It is clear that a preliminary injunction should not be issued if it would grant one of the parties all the relief requested prior to a hearing on the merits. *Bratton, supra,* p 79. It is overwhelmingly clear that the trial court did not grant plaintiffs full relief in the preliminary injunction. In addition to a preliminary injunction, plaintiffs requested penalties and damages. The trial court did not award penalties and damages. The trial court also limited its injunction to ordering defendant to only clean up the ground underneath its two facilities. Since it is patently clear that the trial court did not grant the full relief requested by plaintiffs, defendant's arguments obviously lack merit.

Defendant next claims that the court erred in granting the preliminary injunction since it granted relief beyond that necessary to preserve the status quo. The object of a preliminary injunction is to preserve the status quo, which is the last actual, peaceable, noncontested status which proceeded the pending controversy, so that upon the final hearing the rights of the parties may be determined without injury to either. *Bratton, supra,* p 79. Defendant argues that the status quo should be preserved by allowing it to continue storing toluene on its premises but requiring it to cease handling and storing any substance on the Michigan hazardous chemicals list. Since defendant has already voluntarily done this, defendant claims that a preliminary injunction is unnecessary. However, plaintiffs contend that the maintenance of the status quo requires that there be no more leakage of any toxin into the groundwater from defendant's facilities and the removal of the toxins from the groundwater underneath defendant's sites so as to prevent them from flowing onto other lands.

We feel that a mandatory injunction was proper in this case. *Rhodia, Inc v Harris County,* 470 SW2d 415 (Tex Civ App, 1971). The status quo ante is an unpolluted environment. It is clear that the status quo in this case is the maintenance of uncontaminated groundwater and soil. Defendant's proposed solution would not prevent the contaminants which defendant has already poured into the ground from flowing onto neighboring properties. Therefore, to preserve the status quo, it was apropriate to require defendant to install groundwater purge wells and monitoring wells and to treat all purged groundwater with a granular activated cabon filtration system. We also feel that the trial court did not improperly prohibit defendant from continuing to store toluene in its underground storage tank simply because it does not appear on the Michigan hazardous chemicals list. There was strong evidence unrebutted by defendant that toluene is a toxic chemical which caused the groundwater underlying defendant's facility to be unfit for domestic or commercial use. The trial court properly exercised its discretion to preserve the status quo.

Defendant next argues that there was insufficient evidence to establish a likelihood of plaintiffs' success on the merits of this case. We disagree. See *Attorney General v John A Biewer Co, Inc.* 140 Mich App 1; 363 NW2d 712 (1985). There was ample evidence that the toxic substances which contaminated the wells in question flow through the groundwater from the defendant's facilities. Defendant's claim that a finding of nuisance was unsupported by the evidence is merely speculation. While there were two other suspected sources contributing to the wells' contamination, there was a well-defined plume of contaminants leaving defendant's property. See *Attorney Gen-*

*eral v John A Biewer Co, Inc, supra,* p 7. Again, defendant fails to support its argument, which clearly lacks merit.

Defendant also argues that there was no showing of a likelihood of irreparable or immediate harm. To the contrary, there was ample evidence to support such a finding. It is undisputed that the toxic substances found flowing from defendant's property are very hazardous. It is also undisputed that these toxic substances were found in water supplies. While defendant raises questions concerning the precise direction of flow of the groundwater and the rate of flow from its premises, the essential fact remains that the condition of defendant's premises is causing immediate and continuing damage to nearby groundwaters.

Defendant next argues that it was denied due process as a result of the expedited hearing which was held pursuant to GCR 1963, 782. Defendant first claims that it was entitled to discovery before the expedited hearing. Defendant, however, fails to site any authority which indicates that it is entitled to discovery before an expedited hearing held pursuant to GCR 1963, 782. Defendant's contention that it was entitled to discovery is in contravention to the obvious purpose behind GCR 1963, 782, which is to provide for an *expedited* hearing. Defendant has failed to show that a hearing pursuant to GCR 1963, 782 is unfair and, therefore, fails to support its claim that it was denied due process. We note that defendant is entitled to discovery in the underlying action. Defendant's claim lacks merit.

Defendant also asserts the equitable defense of laches. Defendant must show that there was a delay or passage of time in bringing this suit which caused defendant prejudice and a lack of

due diligence by plaintiff. *In re Crawford Estate,* 115 Mich App 19, 25-26; 320 NW2d 276 (1982).

Defendant has failed to establish prejudice and a lack of due diligence on the part of plaintiffs. The record establishes that the contamination of the municipal water supply was discovered in September, 1981. At that time, defendant was suspected to be one of the primary sources of the contamination. For the next two years the DNR sought to have defendant conduct the necessary hydrogeologic studies to determine whether it was in fact the cause of this contamination, but the defendant refused to comply with these requests. Laches is an equitable concept. *Baerlin v Gulf Refining Co,* 356 Mich 532; 96 NW2d 806 (1959). One who seeks equity must do or offer to do equity. *Tuller v Detroit Trust Co,* 259 Mich 670; 244 NW2d 197 (1932). Defendant may not assert the defense of laches since it failed to comply with the DNR's reasonable request to conduct these tests. *Stabile v General Enterprises,* 70 Mich App 711; 246 NW2d 375 (1976). Since defendant does not have clean hands, it cannot assert the equitable defense of laches. *McCluskey v Winisky,* 373 Mich 315; 129 NW2d 400 (1964).

Defendant next argues that the circuit court lacked jurisdiction in this matter. First defendant claims that the passage of the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 USC 9601 *et seq.,* directly preempted state law governing the abatement of public nuisances and, therefore, according to defendant, the circuit court in this matter did not have jurisdiction to hear the case. In the alternative, defendant argues that, even if CERCLA did not expressly preempt state law, application of the primary jurisdiction doctrine necessitates a conclu-

sion that the circuit court was required to defer jurisdiction to the EPA.

With regard to its preemption argument, defendant relies primarily upon 42 USC 9614(a), which states that nothing in the statute shall be construed as to preempt any state from imposing any "additional liability" or requirement with respect to the release of hazardous subdtances within that state. We however do not read isolated portions of statutes out of context. A plain reading of § 9614 shows that, instead of preempting state law, that statute provides that states may supplement any liability or requirements that may be imposed under CERCLA. Section 9614 does not state that the individual states are precluded from duplicating liability imposed under CERCLA. Defendant's reliance upon that provision is therefore misplaced. Moreover, § 9606(a) expressly provides that jurisdiction over pollution abatement actions is vested in both the states and local governments and in the President of the United States and his delegates. Both state and federal governments therefore have concurrent jurisdictions over pollution abatement cases. CERCLA was primarily enacted to fill gaps left by earlier federal legislation in dealing with abandoned dump sites and was intended to provide funds for state hazardous waste programs. *Jones v Inmont Corp,* 584 F Supp 1425, 1428 (SD Ohio, 1984). It is clear that CERCLA was intended only to supplement hazardous waste programs and not to preempt state programs.

Defendant also claims that, since the EPA is better equipped to handle this case, the trial court should have deferred jurisdiction to the EPA. During the bankruptcy proceeding, an EPA agent testified that, as a result of the circuit court's preliminary injunction, there is no longer an

emergency situation regarding the possible contamination of groundwater surrounding defendant's facilities. Since the agency which defendant now claims should control this action admits that the circuit court's actions were proper, we decline to apply the doctrine of primary jurisdiction to this case. In light of the resources of the EPA and the demands on that agency, we do not feel that it would be proper to transfer sole jurisdiction of this matter to the EPA. The circuit court had jurisdiction and properly issued the preliminary injunction.

Affirmed.