DOSTER v ESTES

Docket No. 59702. Submitted January 20, 1983, at Detroit.—Decided June 21, 1983. Leave to appeal applied for.

Clarence Doster, Dorothy Lamb, and the nine other plaintiffs in this action are black male and female employees of the Department of Mental Health (DMH), occupying civil service classifications 9 through 14, hired by the DMH since 1979. On April 10, 1981, the plaintiffs were informed that their jobs would be abolished or that they would be demoted effective April 24, 1981. On April 23, 1981, the plaintiffs filed an action in the Wayne Circuit Court against Ivan Estes, Personnel Director of the Department of Mental Health, various other officers and directors of the DMH, the governor and the Civil Service Commission requesting the issuance of a temporary restraining order and a declaratory judgment that the abolition of certain civil service job classifications affecting minorities and the demotion and layoff of minority employees in the DMH are being conducted arbitrarily and capriciously in violation of civil service regulations, executive orders and Const 1963, art 1, §§ 2, 17, regarding equal protection and due process of law. On April 23, 1981, the court, Roland L. Olzark, J., issued a temporary restraining order and order to show cause restraining defendants from changing the employment status of the plaintiffs pending a review at a hearing on the declaratory judgment and show cause which was scheduled for April 29, 1981, before Judge Peter B. Spivak. During May, June, and July, 1981, Judge Spivak conducted hearings regarding the temporary restraining order and heard arguments on summary judgment motions filed by both plaintiffs and defendants. After the hearings were concluded, Judge Spivak continued the restraining

REFERENCES FOR POINTS IN HEADNOTES
[1] 42 Am Jur 2d, Injunctions § 23.
[2] 42 Am Jur 2d, Injunctions § 23 *et seq.*
[3] 42 Am Jur 2d, Injunctions §§ 48, 49, 70, 257 *et seq.*
[4, 7, 8] 2 Am Jur 2d, Administrative Law § 595.
   15A Am Jur 2d, Civil Service §§ 80, 84.
[5] 16A Am Jur 2d, Constitutional Law § 735.
[6] 15 Am Jur 2d, Civil Rights §§ 7, 494.

order. However, Judge Spivak issued no findings of fact or conclusions of law and retired from the bench prior to signing a written order. Since the parties could not agree on what Judge Spivak had verbally ordered, Judge Harry J. Dingeman, Jr., signed an order on August 14, 1981, denying defendants' motion to dissolve the *ex parte* restraining order issued by Judge Olzark. The Court of Appeals thereafter granted defendants leave to appeal and the Court's order also stayed the restraining order. On appeal, defendants requested that the Court of Appeals reverse the restraining order and grant defendants' motion for summary judgment. *Held:*

1. The issuance or denial of equitable relief depends upon the facts of each case. The Court of Appeals was unable to evaluate the actions of either judge for an abuse of discretion because no findings of fact were made. However, on a *de novo* review of the facts, the Court of Appeals found that the issuance and continuance of the restraining order allowing all 11 plaintiffs to maintain their positions was erroneous.

2. An *ex parte* restraining order must define the injury and state why it is irreparable. The order issued by Judge Olzark did not state the injury or say why it was irreparable. Thus, the Court of Appeals referred to the plaintiffs' affidavits filed at the time the order was issued to determine if each plaintiff claimed an irreparable injury.

3. Only plaintiff Dorothy Lamb, and perhaps plaintiff James Pattillo, because of having to move their families, alleged facts indicating that a restraining order could issue.

4. It was error for Judge Olzark to issue a restraining order which applied to all of the plaintiffs when not all of the plaintiffs had alleged irreparable injury necessary for injunctive relief. It was an abuse of discretion for Judge Spivak to continue the restraining order without stating any reasons for its issuance, in light of the fact that he found no discrimination. The restraining order issued by Judge Olzark and continued by Judge Spivak was revoked.

5. The plaintiffs must first exhaust the civil service grievance process before seeking a declaratory judgment. While plaintiffs could properly seek injunctive relief and a determination of their constitutional claims in the circuit court, an action for declaratory relief is improper when a party has not exhausted established grievance procedures. Exhaustion of the grievance procedure would not be futile here since the Civil Service Commission could properly hear plaintiffs' claims regarding abolition of the plaintiffs' positions.

6. The testimony established that the motivation for the

reorganization was economics and administrative efficiency. Although the reorganization may have had a racially disproportionate impact, no racially discriminatory intent was expressed nor can one be inferred from the evidence presented. Under the circumstances, there was no violation of the Equal Protection Clause, therefore, the defendants are entitled to a summary judgment in their favor on the equal protection issue.

7. The plaintiffs were not denied due process.

8. Where an administrative grievance procedure is provided, exhaustion of that remedy prior to review by the courts is necessary except where excused. All of the policy considerations served by the doctrine of exhaustion of administrative remedies support the proposition that plaintiffs must first exhaust their administrative remedies before the courts will consider their claim that the pronouncements of the Michigan Equal Employment Opportunity Council and internal DMH policies regarding affirmative action created enforceable rights for the plaintiffs which were violated by the defendants. In addition, defendants' request for summary judgment on this issue was improper at that time since any one of the plaintiffs might have a legitimate claim under this theory after exhaustion of the grievance procedure.

9. The issuance and continuance of the restraining orders was erroneous. The defendants were granted summary judgment by the Court of Appeals on the issues regarding claimed equal protection and due process violations.

Reversed.

1. Equity — Restraining Orders — Court Rules.

A restraining order granted without notice must define the injury and state why it is irreparable; every order granting an injunction or a restraining order, when not granted *ex parte,* must set forth the reasons for its issuance (GCR 1963, 718.2[2][c], 718.9[1]).

2. Equity — Equitable Relief.

The issuance or denial of equitable relief depends upon the facts of each case.

3. Equity — Restraining Orders — Multiple Plaintiffs — Irrepa
·rable Injury.

It is erroneous for a court to issue a restraining order which applies to all of the plaintiffs in an action where not all of the plaintiffs have alleged irreparable injury necessary for injunctive relief; it is an abuse of discretion where another judge thereafter continues such a restraining order without stating

any reasons for its issuance and following a finding that there was no discrimination as alleged by the plaintiffs.

4. DECLARATORY JUDGMENTS — CIVIL SERVICE REGULATIONS — EXHAUSTION OF GRIEVANCE PROCEDURES — CONSTITUTIONAL LAW.

Declaratory relief is not available in an original circuit court action for claimed violations of civil service regulations where the party seeking such relief has not exhausted established civil service grievance procedures (Const 1963, art 11, § 5).

5. CONSTITUTIONAL LAW — EQUAL PROTECTION.

The Equal Protection Clause of the Michigan Constitution affords the same rights as the federal Equal Protection Clause (US Const, Am XIV; Const 1963, art 1, § 2).

6. CONSTITUTIONAL LAW — EQUAL PROTECTION — RACIALLY DISPROPORTIONATE IMPACT — DISCRIMINATORY RACIAL PURPOSE.

A law or other official act, without regard to whether it reflects a racially discriminatory purpose, is not unconstitutional on the basis of equal protection solely because it has a racially disproportionate impact; the discriminatory racial purpose of an unconstitutional act does not have to be express or appear on the face of the statute, but may often be inferred from the totality of the relevant facts, including the fact, if it is true, that the law bears more heavily on one race than another.

7. ADMINISTRATIVE LAW — EXHAUSTION OF ADMINISTRATIVE REMEDIES — APPEAL.

A plaintiff must first exhaust his administrative remedies, except where excused, prior to a review of the plaintiff's claim by the courts where an administrative grievance procedure is provided for the plaintiff's claim.

8. ADMINISTRATIVE LAW — EXHAUSTION OF ADMINISTRATIVE REMEDIES — PUBLIC POLICY.

The doctrine of exhaustion of administrative remedies serves several policies: (1) an untimely resort to the courts may result in delay and disruption of an otherwise cohesive administrative scheme, (2) judicial review is best made upon a full factual record developed before the agency, (3) resolution of the issues may require the accumulated technical competence of the agency or may have been entrusted by the Legislature to the agency's discretion, and (4) a successful agency settlement of the dispute may render a judicial resolution unnecessary.

*Carl R. Edwards,* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *George L. McCargar* and *James M. Batzer,* Assistants Attorney General, for defendants.

Before: V. J. BRENNAN, P.J., and GRIBBS and C. J. HOEHN,* JJ.

V. J. BRENNAN, P.J. The eleven plaintiffs in this case are black male and female employees of the Department of Mental Health (DMH), occupying civil service classifications 9 through 14, hired by the DMH since 1979. On April 10, 1981, plaintiffs were informed that their jobs would be abolished or they would be demoted effective Friday, April 24, 1981. On April 23, 1981, plaintiffs filed an action in Wayne County Circuit Court requesting the issuance of a temporary restraining order and a declaratory judgment "that the abolition of certain civil service job classifications affecting minorities and demotion and layoff of minority employees in the State Department of Mental Health are being conducted arbitrarily and capriciously in violation of civil service regulations, executive orders, and 1963 Michigan Constitution, art 1, § 2 (prohibiting denial of equal protection of laws and discrimination) and art 1, § 17 (requiring due process of law)". On April 23, 1981, Judge Roland L. Olzark issued a temporary restraining order and order to show cause restraining defendants from changing the employment status of plaintiffs pending review at a hearing on declaratory judgment and show cause scheduled for April 29, 1981, before Judge Peter B. Spivak.

During May, June, and July, 1981, Judge Spivak conducted hearings regarding the temporary restraining order. We note that during the hearings

---

* Circuit judge, sitting on the Court of Appeals by assignment.

plaintiffs' counsel repeatedly stated that this was not a case about discriminatory racial intent.

Gabriel Cifor, Acting Chief Deputy Director of the DMH, testified that due to continuing fiscal crisis in state government at the beginning of 1981 it became clear to top officials in the Department of Mental Health that the department had to reduce expenditures by $32,000,000 for the fiscal year ending September 31, 1981. As part of that needed reduction, the then Director of the Department of Mental Health, Dr. Frank Ochberg, instructed Mr. Cifor that $1,000,000 in expenditures should be pared from central office operations. Dr. Ochberg instructed that "serious cuts" be made in upper level personnel in the regional offices and that the reduction in force be accompanied by a reorganization of regional office operations. The regional offices, for personnel purposes, are part of the Department of Mental Health's central office. In the reorganization and reduction in force which occurred, the number of regional offices was reduced from 6 to 4 statewide, and a total of 87 positions were abolished for reasons of administrative efficiency. Mr. Cifor was given wide latitude in abolishing positions, but he did not look either at the individual incumbent of the position abolished or at the race of the individual incumbent. Further, Mr. Cifor stated that it would be counterproductive to look at individual incumbents of positions in a reorganization. What was needed was a structure that was reorganized by function. Moreover, Mr. Cifor testified that it would make little sense to abolish or retain positions by looking at the individual incumbent, because after the "bumping" which accompanies a reduction in force he would not know where a given incumbent would end up. Upon cross-examination, Mr. Cifor

testified that he did not look for the effect of the reorganization and reduction in force upon minorities nor did he look at the department's affirmative action plan. His testimony was that he considered those things to be a matter for the department's office of personnel to consider in implementing the reduction in force. His task was to devise a new organizational structure and reduce expenditures by $1,000,000 through a reduction in force based upon the neutral principle of administrative efficiency.

Mr. Wesley McMichael, personnel officer for the central office of the DMH, testified that prior to the April 24, 1981, layoffs there was an underutilization of black professionals in Wayne County. With the layoffs, the underutilization increased. Mr. McMichael explained that: "There is a standard established for each protected group, and to determine as to whether or not there is underutilization, you compare your statistics, or staffing, against those standards, and if there is something less than standard, then you have underutilization". Further, Mr. McMichael explained that an affirmative action waiver could be sought to protect an employee in an underutilized, protected group from being "bumped" from his position by a more senior employee in the event of layoffs. With a waiver in place, the protected employee is passed over in the bumping chain. However, if a person's position is abolished that person is not eligible for an affirmative action waiver. It is only when a protected person's position is being bumped by someone more senior than themselves that they are eligible for the waiver process. An affirmative action waiver was sought for 1 out of the 11 plaintiffs. Affirmative action waivers were not sought for the ten remaining plaintiffs because

their situations did not meet the criterion for requesting a waiver.

Mr. McMichael presented the following figures: As a result of the April 24, 1981, layoffs, 87 central office positions were abolished statewide. Sixty-five of these positions were held by white incumbents, 17 by black incumbents, and 5 by other minorities. In the metropolitan regional office, 20 positions were abolished. Ten of these were held by white incumbents, 9 by black incumbents, and 1 by an Asian-American male. Before the layoff, the total metropolitan regional office staff was 94; after the layoff, 74. Before the layoffs, there were 35 black employees; after, there were 26. The percentage of black employees changed from 37.2% to 35.6% for a decline of 1.5%. Mr. McMichael opined that a 1.6% decrease was not highly significant. In the professional categories in Wayne County, there were 84 total employees before the layoffs of which 25 were black. After the layoffs, there were 70 total employees of which 19 were black. The percentage of blacks went from 29.7% to 27.1%, a decrease of 2.6%.

Mr. McMichael further testified that position abolishment is an issue for which an employee can file a grievance. An alleged error or mistake in the "bump" chain, such as the personnel office computing the chain incorrectly, is also a grievable issue. The parties stipulated that as of July 16, 1981, only plaintiff Peterson and plaintiff Doster had filed grievances with the civil service or initiated contractual grievance procedures. Subsequently, the remaining plaintiffs, except for Pattillo and Wheeler, instituted grievances within the civil service grievance system.

In conjunction with the hearings on the temporary restraining order, on July 16, 1981, Judge

Spivak heard arguments on summary judgment motions filed by both plaintiffs and defendants.

After the hearings were concluded, Judge Spivak continued the restraining order. However, Judge Spivak issued no findings of fact or conclusions of law and retired from the bench prior to signing a written order. Since the parties could not agree on what Judge Spivak had verbally ordered on July 16, 1981, Judge Harry J. Dingeman, Jr., signed an order on August 14, 1981, denying defendants' motion to dissolve the *ex parte* restraining order issued by Judge Olzark.

Defendants sought leave to appeal to this Court, which was granted on October 13, 1981. This Court's order of October 13, 1981, also stayed the restraining order. Defendants request, in their prayer for relief, that this Court reverse the restraining order and grant defendants' motion for summary judgment. Because the trial judge did not rule on the summary judgment issues, defendants' request for this Court to grant summary judgment is presumably based upon GCR 1963, 820.1(7), which permits this Court to "[g]ive any judgment and make any order which ought to have been given or made, and make such other and further orders and grant such relief, as the case may require".

The first issue the defendants raise for our consideration is whether the granting of an *ex parte* temporary restraining order and the continuance of that order following a trial on the merits was an abuse of the trial judge's discretion.

GCR 1963, 718.2(1) provides:

"Except as otherwise provided by statute or these rules, no preliminary injunctions may be granted until hearing on a motion or order to show cause why a preliminary injunction should not issue. *If it clearly*

*appears from specific facts shown by affidavit or by a verified complaint that immediate and irreparable injury, loss or damage, or physical injury will result to the applicant, a restraining order may be issued* ex parte *pending the hearing on the motion or order to show cause."* (Emphasis added.)

A restraining order granted without notice must "define the injury and state why it is irreparable", GCR 1963, 718.2(2)(c). Where not granted *ex parte,* every order granting an injunction or a restraining order must set forth the reasons for its issuance, GCR 1963, 718.9(1).

This Court recently decided two cases which deal extensively with the question of when injunctive relief is appropriate. In *Bratton v Detroit Automobile Inter-Ins Exchange,* 120 Mich App 73, 79; 327 NW2d 396 (1982), the Court stated:

"The grant or denial of a preliminary injunction is within the sound discretion of the trial court. *Grand Rapids v Central Land Co,* 294 Mich 103, 112; 292 NW 579 (1940); *Michigan Consolidated Gas Co v Public Service Comm,* 99 Mich App 470, 478; 297 NW2d 874 (1980). The object of a preliminary injunction is to preserve the status quo, so that upon the final hearing the rights of the parties may be determined without injury to either. *Gates v Detroit & M R Co,* 151 Mich 548, 551; 115 NW 420 (1908). The status quo which will be preserved by a preliminary injunction is the last actual, peaceable, noncontested status which preceded the pending controversy. *Steggles v National Discount Corp,* 326 Mich 44, 51; 39 NW2d 237 (1949); *Van Buren School Dist v Wayne Circuit Judge,* 61 Mich App 6, 20; 232 NW2d 278 (1975). The injunction should not be issued if the party seeking it fails to show that it will suffer irreparable injury if the injunction is not issued. *Niedzialek v Barbers Union,* 331 Mich 296, 300; 49 NW2d 273 (1951); *Van Buren School Dist, supra,* p 16. Furthermore, a preliminary injunction will not be issued if it will grant one of the parties all the relief

requested prior to a hearing on the merits. *Epworth Assembly v Ludington & N R Co,* 223 Mich 589, 596; 194 NW 562 (1923). Finally, a preliminary injunction should not be issued where the party seeking it has an adequate remedy at law. *Van Buren School Dist, supra,* p 16."

In *Michigan State Employees Ass'n v Dep't of Mental Health,* 120 Mich App 39, 44-45; 328 NW2d 11 (1982), this Court upheld the granting of a preliminary injunction for plaintiff, where:

"plaintiff employee is a divorced mother with a 9-year-old son who resides with her. She provides the sole financial support for that child, has no savings, and would have no means of supporting herself and her child if terminated from her job. In addition, if defendant is permitted to fire plaintiff employee for alleged patient neglect, it is unlikely that she will be able to obtain employment elsewhere as a registered nurse. We agree with the Court's decision in *Lake Michigan College Federation of Teachers v Lake Michigan Community College,* 390 F Supp 103, 138 (WD Mich, 1974), *rev'd on other grounds* 518 F2d 1091 (CA 6, 1975), that: '[t]he loss of the breadwinner's wages, even for a short period of time, constitutes specific irreparable damage. That is especially true * * * where there is testimony that several of plaintiffs are the sole support of families with several younger children.' We find that plaintiff employee has established the type of irreparable injury necessary to support the issuance of a preliminary injunction."

The Court relied upon the dissenting opinions in *Sampson v Murray,* 415 US 61; 94 S Ct 937; 39 L Ed 2d 166 (1974). The Court also set forth the following standard of review:

"In equity cases such as those granting or denying injunctive relief, this Court reviews the record *de novo,* giving due deference to the findings of the circuit court.

This Court is required to sustain the findings of the circuit court unless it is convinced that, had it heard the evidence in the first instance, it would have been compelled to reach a contrary result. *Groveland Twp v Jennings,* 106 Mich App 504, 509-510; 308 NW2d 259 (1981).

"The purpose of a preliminary injunction is to preserve the status quo pending trial or, in this case, pending plaintiff employee's administrative appeal. An injunction should not be granted unless the party requesting it satisfies the court that, without the issuance of the injunction, he or she will suffer irreparable injury. In addition, there must be a showing that there is no adequate remedy at law. *Barkau v Ruggirello,* 100 Mich App 617, 623; 300 NW2d 342 (1980)." *Michigan State Employees Ass'n, supra,* p 42.

The Court held that "the trial court did not err in granting plaintiff employee the preliminary injunction. Loss of income and damage to reputation may constitute the type of irreparable injury necessary for injunctive relief. In addition, the lack of an immediately available legal remedy may demonstrate the inadequacy of the legal remedy". *Michigan State Employees Ass'n, supra,* pp 45-46.

It is apparent from the above-cited cases that the issuance or denial of equitable relief depends upon the facts of each case. In the instant case, we note that we are unable to evaluate the actions of the issuing judge, Judge Olzark, or the actions of Judge Spivak for an abuse of discretion because no findings of fact were made. However, on a *de novo* review of the facts, we find that the issuance and continuance of the restraining order allowing all 11 plaintiffs to maintain their positions was erroneous.

Pursuant to GCR 1963, 718.2(2)(c), an *ex parte* restraining order must "define the injury and state

why it is irreparable". Since the order issued by Judge Olzark does not state the injury and why it is irreparable, reference must be made to the plaintiff's affidavits filed at the time the order was issued to determine the situation of each plaintiff. The plaintiffs in this case have varied life styles and obligations and were individually affected by the proposed reorganization and layoffs: some were to be "bumped" or demoted; some were to be laid off; some would ultimately have no change in their status. We review the plaintiffs' affidavits to determine if an irreparable injury was claimed.

Clarence Doster's claimed injury was that he would be forced to relocate to a new location only three months after moving to the Detroit area, which would be a stressful, emotional hardship.

Daisy Barlow-Smith was on medical leave, and her status would be determined on her return to work. She assumed that there would be no position for her in the Metro Regional Office on her return.

Terry Barksdale noted that the situation would be stressful and a tremendous financial burden.

Yvonne Harbin did not state any injury other than a general allegation of discrimination.

Ervin Johnson, Jr., did not state a specific injury.

Dorothy Lamb stated that she would probably have to "bump" into a position in Lansing which, besides meaning a loss in pay, would mean selling her home and totally disrupting her family. Ms. Lamb is married with two children.

Michelle Long has only one possible "bump", in Lansing, which would be stressful and a financial hardship.

Helen Mayfield stated no specific injury.

Stanley Parker stated no specific injury.

James Pattillo stated that he would probably

have to move to Lansing, which would be a stressful, emotional and financial hardship for him and his family.

Robert Peterson complained that he was being demoted one level.

Earl Wheeler complained that he would have to "bump" into a job in Lansing or take a layoff.

Construing the above in a light most sympathetic to the plaintiffs' situations, it appears that only Dorothy Lamb, and perhaps James Pattillo, because of having to move their families, alleged facts indicating that a restraining order could issue. To issue a restraining order which applied to all of the plaintiffs when not all of the plaintiffs had alleged irreparable injury necessary for injunctive relief was erroneous. For Judge Spivak to continue the restraining order without stating any reasons for its issuance, in light of the fact that he found no discrimination, was also an abuse of discretion. Therefore, we revoke the restraining order issued by Judge Olzark and continued by Judge Spivak.

Defendants also claim that declaratory relief is not available in an original circuit court action for claimed violations of civil service regulations where no violation of Const 1963, art 11, § 5 is claimed or pleaded.

In one of several counts in their complaint, the plaintiffs alleged that the defendants violated civil service regulations and sought a declaratory judgment. Plaintiffs did not plead any violation of the constitutional provisions relating to the civil service contained in Const 1963, art 11, § 5. Defendants claim that plaintiffs must first exhaust the civil service grievance process before seeking a declaratory judgment. We agree. While plaintiffs could properly seek injunctive relief and a deter-

mination of their constitutional claims in the circuit court, an action for declaratory relief is improper when a party has not exhausted established grievance procedures. Const 1963, art 11, § 5; *Calcatera v Civil Service Comm,* 52 Mich App 27; 216 NW2d 613 (1974), *lv den* 391 Mich 827 (1974). We reject plaintiffs' claim that exhaustion of the grievance procedure in this case would be futile. The Civil Service Commission could properly hear plaintiffs' claims regarding abolition of the plaintiffs' positions. See *Hutchinson v Dep't of Mental Health,* 108 Mich App 725; 310 NW2d 856 (1981), *lv den* 413 Mich 929 (1982), where ten plaintiffs claimed that the abolition of their positions was politically motivated and the Civil Service Commission properly heard those claims.

Defendants next contend that they were entitled to summary judgment on the issue of whether the DMH's reorganization was in violation of the Equal Protection Clause of the Michigan Constitution where the reorganization would have an adverse impact upon an underutilized protected group. The trial judge did not make a ruling on this issue.

Defendants concede that the circuit court had jurisdiction to hear plaintiffs' claims regarding an alleged equal protection violation. However, the defendants argue that there was no equal protection violation in this case because the reduction in staff was based upon racially neutral criteria and there was no purposeful discrimination.

On the other hand, plaintiffs argue that the Department of Mental Health's reorganization is in violation of the Michigan Constitution since it was conducted in an arbitrary and discriminatory manner. Plaintiffs claim that a discriminatory purpose can be inferred from the actions of the

department. Further, plaintiffs maintain that the totality of the circumstances demonstrates that the plaintiffs are victims of discrimination, particularly in light of the state's commitment to equal employment opportunity by affirmative action.

The Equal Protection Clause of the Michigan Constitution, Const 1963, art 1, § 2, affords the same rights as the federal Equal Protection Clause. *Fox v Employment Security Comm,* 379 Mich 579; 153 NW2d 644 (1967). In *Washington v Davis,* 426 US 229; 96 S Ct 2040; 48 L Ed 2d 597 (1976), the Supreme Court found that a law or other official act, without regard to whether it reflects a racially discriminatory purpose, is not unconstitutional on the basis of equal protection solely because it has a racially disproportionate impact. Further, the Court stated that the necessary discriminatory racial purpose does not have to be express or appear on the face of the statute but may often be inferred from the totality of the relevant facts, including the fact, if it is true, that the law bears more heavily on one race than another.

In the instant case, the testimony revealed that in the professional categories in Wayne County there were 84 employees before the layoff, of which 25 were black. After the layoff, there were 70 employees, of which 19 were black. Further, throughout the proceedings, the plaintiffs admitted that no one in the executive branch acted with any malice, animus or ill will toward black employees in effecting the reorganization. The trial judge also found that there was no discriminatory intent. The testimony established that the motivation for the reorganization was economics and administrative efficiency. Under these circumstances, we find that there was no violation of the Equal Protection Clause. Although the reorganiza-

tion may have had a racially disproportionate impact, no racially discriminatory intent was expressed nor can one be inferred from the evidence presented. Therefore, on this issue, the defendants are entitled to summary judgment in their favor. In addition, we find that plaintiffs were not denied due process.

The final issue raised for our consideration is whether the pronouncements of the Michigan Equal Employment Opportunity Council (MEEOC) created rights in individual state classified employees that are enforceable through court action.

Throughout the proceedings in the trial court, plaintiffs argued that the defendants violated certain procedures alleged to be required by the MEEOC in implementing the proposed reduction in staff. Plaintiffs claimed that both the MEEOC and internal Department of Mental Health policies regarding affirmative action created enforceable rights for the plaintiffs which were violated by the defendants. Plaintiffs based their claim upon the case of *Toussaint v Blue Cross & Blue Shield of Michigan,* 408 Mich 579; 292 NW2d 880 (1980), where the Supreme Court held that personnel policies and procedures of an employer can give rise to contractual rights in employees when an employee's legitimate expectations are grounded on an employer's policy statements.

We find that it is unnecessary for us to reach the merits of the issue raised because plaintiffs must first exhaust established grievance procedures before seeking judicial consideration of their claim based upon *Toussaint, supra.*[1]

---

[1] Further, it is unlikely that pronouncements of the MEEOC, an advisory board, could create rights in the individual state employees under a *Toussaint* theory where Const 1963, art 11, § 5 states that the Civil Service Commission shall regulate all conditions of employment for classified positions:

Const 1963, art 11, § 5, which sets forth the powers and duties of the Civil Service Commission, states in part:

"The appointing authorities may create or abolish positions for reasons of administrative efficiency without the approval of the commission. Positions shall not be created nor abolished except for reasons of administrative efficiency. *Any employee considering himself aggrieved by the abolition or creation of a position shall have a right of appeal to the commission through established grievance procedures.*" (Emphasis added.)

Where an administrative grievance procedure is provided, exhaustion of that remedy prior to review by the courts is necessary except where excused. This Court discussed exhaustion of administrative remedies at length in *International Business Machines Corp v Dep't of Treasury,* 75 Mich App 604, 608, 610; 255 NW2d 702 (1977):

"Michigan courts have long recognized the importance of the doctrine of exhaustion of administrative remedies.

\* \* \*

"Exhaustion of administrative remedies serves several policies: (1) an untimely resort to the courts may result in delay and disruption of an otherwise cohesive administrative scheme; (2) judicial review is best made upon a full factual record developed before the agency; (3) resolution of the issues may require the accumulated technical competence of the agency or may have been

"The commission shall classify all positions in the classified service according to their respective duties and responsibilities, fix rates of compensation for all classes of positions, approve or disapprove disbursements for all personal services, determine by competitive examination and performance exclusively on the basis of merit, efficiency and fitness the qualifications of all candidates for positions in the classified service, make rules and regulations covering all personnel transactions, *and regulate all conditions of employment in the classified service.*" (Emphasis added.)

entrusted by the Legislature to the agency's discretion; and (4) a successful agency settlement of the dispute may render a judicial resolution unnecessary. See *Judges of 74th Judicial Dist v Bay County,* 385 Mich 710, 727-728; 190 NW2d 219, 226 (1971).

"Exhaustion of administrative remedies is not an inflexible condition precedent to judicial consideration, however, and will not be required if review of the agency's final decision would not provide an adequate remedy, MCL 24.301; MSA 3.560(201), *i.e.,* if it would run counter to the policies which underlie the doctrine."

In the instant case, all of the policy considerations listed above support the proposition that plaintiffs must first exhaust their administrative remedies:

(1) Position abolishment or mistakes made in the bump chain are grievable issues;

(2) A full factual record would facilitate review;

(3) The Civil Service Commission would certainly have greater expertise in dealing with "bump" chains and position classifications than the circuit court;

(4) The grievance procedure outcome may satisfy some of the plaintiffs and they would not, then, seek a judicial resolution of the issues.

Therefore, in the instant case, we find that plaintiffs' attempt to base a claim upon the Supreme Court's decision in *Toussaint, supra,* must fail at this time.

Further, defendants' request for summary judgment on this issue would be improper at this time since, on an individual basis, any one of the plaintiffs might have a legitimate claim under a *Toussaint* theory after exhaustion of the grievance procedures.

In conclusion, we find that the issuance and

continuance of the restraining orders was erroneous, and defendants are granted summary judgment on the issues regarding claimed equal protection and due process violations.

Reversed.